NO. 06-288C (Judge Block)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

PEOPLE OF BIKINI, BY AND THROUGH
THE KILI/BIKINI/EJIT
LOCAL GOVERNMENT COUNCIL, et al.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640
E-mail: kathryn.bleecker@usdoj.gov

Of Counsel:

BRUCE K. TRAUBEN
Trial Attorney
Environment and Natural
Resources Division
U.S. Department of Justice

September 15, 2006

Attorneys for Defendant

## TABLES OF CONTENTS

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Statement Of The Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Removal From Bikini Atoll And Nuclear Testing . . . . . . . . . . . . . . . . . . . . 3

B. Political Control And The Compact Of Free Association . . . . . . . . . . . . . 4

C. Prior Court Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

D. Proceedings Before The Nuclear Claims Tribunal . . . . . . . . . . . . . . . . . . 10

E. The Changed Circumstances Request And Political Solution . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I. The Complaint Must Be Dismissed For Lack Of Jurisdiction . . . . . . . . . . . . . . . . 14

A. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B. Congress Withdrew The Jurisdiction Of The Courts To Hear Claims Arising From The Nuclear Testing Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C. This Action Presents A Nonjusticiable Political Question And Should Be Dismissed Because Only Congress May Grant A Remedy, If Any Is Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

D. Plaintiffs' Claims Also Are Barred By The Statute Of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

II. The Complaint Also Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

A. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

B. Plaintiffs Fail To Allege The Occurrence Of Any Federal Government Act Since 1986 That Has Deprived Them Of Any Property Interest . . . . . . . . . . . . . . . . . . . . . . . . . 33

C. Plaintiffs Cannot Establish An Implied In Fact Contract For Additional Funds Because The Compact Agreements Constitute Full Settlement Of All Claims Arising Out Of Or Related To The Nuclear Testing Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# TABLES OF AUTHORITIES

**CASES:** **PAGES:**

Adams v. United States,
391 F.3d 1212 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Advanced Cardiovascular Sys., Inc. v. SciMed LifeSys., Inc.,
988 F.2d 1157 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Alliance of Descendants of Texas Land Grants v. United States,
37 F.3d 1478 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

American Pelagic Fishing Co., L.P. v. United States,
379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

Antolok v. United States,
873 F.2d 369 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

Applegate v. United States,
35 Fed. Cl. 406 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Atlas Corp. v. United States,
895 F.2d 745 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Baker v. Carr,
369 U.S. 186 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Bayer AG. v. Biovail Corp.,
279 F.3d 1340 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Christianson v. Colt Industries Operating Corp.,
486 U.S. 800 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Correlated Dev. Corp. v. United States,
556 F.2d 515 (Ct. Cl. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

Dana v. E.S. Originals, Inc.,
342 F.3d 1320 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

D.R. Smalley & Sons, Inc. v. United States,
372 F.2d 505 (Ct. Cl. 1967) . . . . . . . . . . 34, 35

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, affd,
758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . 14

El-Shifa Pharmaceutical Ind. Co. v. United States,
378 F.3d 1346 (Fed. Cir. 2004) . . . . . . . . . . 23

Goodrich v. United States,
63 Fed. Cl. 477 (2005),
aff'd, 434 F.3d 1329 (Fed. Cir. 2006) . . . . . . . . . . 15

Hornback v. United States,
405 F.3d 999 (Fed. Cir. 2005) . . . . . . . . . . 16

Horowitz v. United States,
267 U.S. 458 (1925) . . . . . . . . . . 34

I.K. Frazer v. United States,
288 F.3d 1347 (Fed. Cir. 2002) . . . . . . . . . . 30

Insurance Co. of North America v. United States,
121 F. Supp. 649 (Ct. Cl. 1954) . . . . . . . . . . 25, 26

Irwin v. Dep't of Veterans Affairs,
498 U.S. 89 (1990) . . . . . . . . . . 30

Japanese War Notes Claimants Ass'n of the Philippines, Inc. v. United States,
373 F.2d 356 (Ct. Cl. 1967) . . . . . . . . . . 31

Japan Whaling Ass'n v. Am. Cetacean Soc'y,
478 U.S. 221 (1986) . . . . . . . . . . 22

Jet, Inc. v. Sewage Aeration Sys.,
223 F.3d 1360 (Fed. Cir. 2000) . . . . . . . . . . 16

Johannes Peter, et al. v. United States,
Cl. Ct. No. 461-82L . . . . . . . . . . 7

John R. Sand & Gravel Co. v. United States,
457 F.3d 1345 (Fed. Cir. 2006) . . . . . . . . . . 25

Juda v. United States,
6 Cl. Ct. 441 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Juda v. United States,
13 Cl. Ct. 667 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Kwan v. United States,
272 F.3d 1360 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Limojwa Nitol, et al. v. United States,
Cl. Ct. No. 453-81L . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Lins v. United States,
688 F.2d 784 (Ct. Cl. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

L.P. Consulting Group, Inc. v. United States,
66 Fed. Cl. 238 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

L.S.S. Leasing Corp. v. United States,
695 F.2d 1359 (Fed. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Lynch v. United States,
292 U.S. 571 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Marbury v. Madison,
5 U.S. (1 Cranch) 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Maritrans Inc. v. United States,
342 F.3d 1344 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Myers Investigative & Sec. Servs., Inc. v. United States,
275 F.3d 1366 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Newby v. United States,
57 Fed. Cl. 283 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nitol v. United States,
13 Cl. Ct. 690 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Nixon v. United States,
506 U.S. 224 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Oetjen v. Central Lumber Co.,
246 U.S. 297 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Ottinger v. United States,
88 F.Supp. 881 (Ct. Cl. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Parklane Hosiery Co. v. Shore,
439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

People of Bikini v. United States,
859 F.2d 1482 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

People of Enewetak, et al. v. United States,
491 U.S. 909 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

People of Enewetak, Rongelap, and other Marshall Islands Atolls v. United States,
864 F.2d 134 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

Peter v. United States,
13 Cl. Ct. 691 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Phaidin v. United States,
28 Fed. Cl. 231 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Renne v. Geary,
501 U.S. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Schroder v. Bush,
263 F.3d 1169 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Soriano v. United States,
352 U.S. 270 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Sun Oil Co. v. United States,
572 F.2d 786 (Ct.Cl. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tomaki Juda, et al. v. United States,
Cl. Ct. No. 172-81 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Truckee-Carson Irrigation Dist. V. United States,
14 Cl. Ct. 361 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Johnson,
529 U.S. 53 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . 14

United States v. Mottaz,
476 U.S. 834 (1986) . . . . . . . . . . 26

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . 14

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 14

Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,
473 U.S. 172 (1985) . . . . . . . . . . 29

Young Eng'rs, Inc. v. United States Int'l Trade Comm'n,
721 F.2d 1305 (Fed. Cir. 1983) . . . . . . . . . . 16

**STATUTES**:

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

28 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

48 U.S.C. § 1901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

48 U.S.C.A. § 1901 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

48 U.S.C. § 1903(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

48 U.S.C.A. § 1921 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**<u>MISCELLANEOUS</u>:**

61 Stat. 3301 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No 99-239,
99 Stat. 1770 (Jan. 14, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Pub. L. No. 100-466, 1988 H.R. 4867
(Sept. 27, 1988), 102 Stat. 1774 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 32

Pub. L. No. 108-188, 2003 H.J.Res. 63
(Dec. 17, 2003), 117 Stat. 2720 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PEOPLE OF BIKINI, BY AND THROUGH THE KILI/BIKINI/EJIT LOCAL GOVERNMENT COUNCIL, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 06-288C (Judge Block) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully moves to dismiss this action for lack of subject matter jurisdiction or, in the alternative, for plaintiffs' failure to state a claim upon which relief can be granted.[1] In support of this motion, defendant relies upon the following brief and attachment, and plaintiffs' complaint and exhibits, filed on April 11, 2006, and amended on July 17, 2006.

STATEMENT OF THE CASE

I. Nature Of The Case

This is another in a series of actions brought by or on behalf of the citizens of the Marshall Islands resulting from the United States' nuclear testing program conducted in the Marshall Islands between June 1946 and August 1958. Plaintiffs in this action contend that the United States' alleged failure or refusal to fund adequately an award of the Nuclear Claims Tribunal issued on March 5, 2001, constituted a taking of their claims without just compensation

[1] Plaintiffs bring this action upon behalf of certain individuals and upon behalf of a class consisting of the people of Bikini. The United States reserves its right to oppose class certification, if this motion to dismiss is denied.

in violation of the Fifth Amendment; a breach of fiduciary duties created by a 1946 implied in fact contract to provide for their care and well being; a breach of implied duties and covenants of that contract; and a breach of implied duties and covenants as third party beneficiaries of agreements between the United States and the Republic of the Marshall Islands ("RMI") that became effective in 1986. In the alternative, plaintiffs contend that these agreements constitute a taking of the Bikini Atoll and related property without just compensation and breaches of fiduciary duties arising from the 1946 implied contract. Plaintiffs seek $561,036,320, which is the amount awarded in the decision and order of the Nuclear Claims Tribunal minus the amounts paid by the Tribunal to date.

II. Statement Of The Issues

1. Whether, as the Claims Court and the Court of Appeals for the Federal Circuit determined in earlier litigation involving and binding upon these plaintiffs, Congress has withdrawn jurisdiction from the courts to address claims, such as brought here, that arise from or are related to the United States' nuclear testing program.

2. Whether, in addition, plaintiffs' claims raise a nonjusticiable political question, and are barred by the six-year statute of limitations contained in 28 U.S.C. § 2501.

3. Whether the complaint also should be dismissed because plaintiffs have failed to state any claims upon which relief can be granted because they failed to allege any act by the United States since 1986 that has deprived them of any property interest, and they cannot establish an implied in fact contract for additional funds because the agreements between RMI and the United States provide a complete settlement of all claims arising out of the nuclear testing program.

III. Statement of Facts[2]

A. Removal From Bikini Atoll And Nuclear Testing

Bikini Atoll is one of 29 atolls and five islands comprising the Marshall Islands, which are located north of the equator in the central Pacific Ocean. Bikini Atoll consists of approximately 26 islands with a combined land area of approximately 2.32 square miles. Bikini Island is the largest island in the atoll. The islands of the atoll enclose a lagoon area of approximately 245 square miles. Amended Complaint ("Am. Compl.") ¶ 15; see id. Ex. A (map).

Micronesia, of which the Marshall Islands are a part, was under Spanish and then German rule until it was seized by Japan during World War I. Am. Compl. ¶¶ 1, 19. The United States seized control of the islands from the Japanese in 1944 during World War II. See id. ¶¶ 19-20. The United States military occupied and controlled Bikini Atoll beginning on or about March 29, 1944. Id. ¶ 20. On January 10, 1946, President Harry S. Truman approved the use of Bikini Atoll for three nuclear tests, code-named "Operation Crossroads." Id. ¶ 21. On March 7, 1946, the United States Navy removed the 167 inhabitants of Bikini Atoll to Rogerik Atoll, 125 miles east of Bikini. Id. ¶ 23. As a result of the dire conditions on Rogerik, the Navy moved the Bikinians to Kwajalein Atoll in March 1948, and moved them again, six months later, to Kili Island, approximately 400 miles southeast of Bikini Atoll. Id. ¶¶ 24-25.

Between June 1946 and July 1958, the United States tested 23 atomic and hydrogen bombs at Bikini Atoll. Id. ¶ 29. According to plaintiffs, "[t]he nuclear tests caused severe,

---

[2] For the purposes of this motion to dismiss, only, we treat as admitted the material allegations of fact set forth in the amended complaint which are cited in this brief. Should this motion be denied, we reserve the right to controvert any fact raised in the amended complaint.

extensive, and long-lasting damage to Bikini Atoll," including its islands and lagoon. Id. ¶ 30. In 1958, President Dwight D. Eisenhower declared a moratorium on United States atmospheric nuclear testing, including on the Marshall Islands. Id. ¶ 32.

The United States began moving Bikinians back to the atoll in 1969, following a report of the Atomic Energy Commission that found that returning to Bikini Atoll would not constitute a "significant threat" to Bikinians' health and safety.[3] Id. ¶ 33. Plaintiffs filed a lawsuit in district court in 1975 seeking to compel the United States to conduct a comprehensive radiological survey of Bikini Atoll. Id. ¶ 34. The litigation was dismissed following agreement to conduct the survey. Id. Subsequently, United States physicians discovered significant increases in the amounts of radioactive cesium-137 in Bikinians who had returned to the atoll. Id. ¶ 35. Therefore, in August 1978, the United States again evacuated the Bikinians from the atoll, relocating some to Ejit Island in Majuro Atoll and others back to Kili Island. Id. ¶ 37.

B. Political Control And The Compact Of Free Association

The United States entered into an agreement with the United Nations ("U.N.") on July 18, 1947, under which Micronesia became a United Nations strategic trust territory administered by the United States. Am. Compl. ¶ 39 (citing Trusteeship Agreement for the Former Japanese Mandated Islands ("Trusteeship Agreement"), 61 Stat. 3301, T.I.A.S. No. 1665 (1947)). The United States initially exercised authority over the Trust Territory of the Pacific Islands through the High Commissioner, who was appointed by the President with the advice and consent of the United States Senate. Id. ¶ 44. On November 3, 1986, the President declared that the United States had fulfilled its obligations under the Trusteeship Agreement and that the Agreement was

[3] The report later was discredited. Am. Compl. ¶ 36.

no longer in effect as of October 21, 1986. The U.N. Security Council announced termination of the Trusteeship Agreement on December 22, 1990, and admitted RMI into the United Nations on August 9, 1991. Id. ¶ 61.

By 1978, the Trust Territory fragmented politically into four governmental entities: the Northern Mariana Islands, Palau, the Marshall Islands, and the Federated States of Micronesia. Id. ¶ 53. The Northern Marianas ultimately achieved commonwealth status, while the remaining governmental entities chose “free association,” a political status recognized by the U.N. General Assembly. Id. Plaintiffs’ government, RMI, negotiated a new political relationship with the United States, provided in a Compact of Free Association (“Compact”) that it initialed in 1980. Id. ¶ 57. The Compact was signed by both governments on June 25, 1983; the Marshall Islanders approved it by a plebiscite in September 1983. Id. ¶¶ 58-59. Congress approved a version of the Compact in December 1985, and the President signed the Compact of Free Association Act into law on January 14, 1986. Id. ¶ 60.

Pursuant to section 177(a) of the Compact:

> The Government of the United States accepts the responsibility for compensation owing to citizens of the Marshall Islands . . . for loss or damage to property and person of the citizens of the Marshall Islands . . . resulting from the nuclear testing program which the Government of the United States conducted in the Northern Marshall Islands between June 30, 1946, and August 18, 1958.

Compact of Free Association Act of 1985 (the "Compact Act"), Pub. L. No. 99-239, 99 Stat. 1770 (Jan. 14, 1986), Tit. I, Art. VII, § 177(a)) (the Compact Act has been codified beginning 48 U.S.C. § 1901; see 48 U.S.C.A. § 1901 note). See also Am. Compl. ¶ 63.

Section 177(b) of the Compact Act provides that the United States and the Marshall

Islands would negotiate a separate agreement for the "just and adequate settlement of all [personal injury and property damage] claims" resulting from the United States' nuclear testing program. Id. (citing Compact Act § 177(b)). Pursuant to section 177(b), the governments negotiated a separate "Agreement Between the Government of the United States and the Government of the Marshall Islands for the Implementation of Section 177 of the Compact of Free Association" ("Section 177 Agreement"). Am. Compl., Ex. B; see also Am. Compl. ¶ 64. The Section 177 Agreement established a $150 million trust fund ("Trust Fund"), the income from which was earmarked, in part, for distribution to the people of Bikini, Enewetak, Rongelap and Utrik and the Nuclear Claims Tribunal. Am. Compl., Ex. B at 2; Am. Compl. ¶ 66. The agreement allocated $75 million to the Bikini Distribution Authority in payment of claims for loss or damage to property and the people of Bikini, to be disbursed in quarterly amounts of $1.25 million for a 15-year period, and to be "distributed, placed in trust or otherwise invested as the Bikini Distribution Authority may determine consistent with this Agreement." Am. Compl., Ex. B at 4 and Appendix A-1 ("Distribution of Annual Proceeds, People of Bikini").

Article X of the Section 177 Agreement, entitled "Espousal," provides:

> Section 1 - Full Settlement of All Claims
>
> This Agreement constitutes the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program, and which are against the United States, its agents, employees, contractors and citizens and nationals, and of all claims for equitable or any other relief in connection with such claims including any of those claims which may be pending or which may be filed in any court or other judicial or administrative forum, including the courts of the Marshall Islands and the courts of the United States and its political subdivisions.

Am. Compl., Ex. B at 12; see Am. Compl. ¶ 68.

Article XI of the Agreement provides that the Marshall Islands shall indemnify and hold harmless the United States for any liability it may incur on Article X claims, up to $150 million. Am. Compl., Ex. B at 12-13.

Article XII of the Section 177 Agreement, entitled "United States Courts," provides:

> All claims described in Articles X and XI of this Agreement shall be terminated. No court of the United States shall have jurisdiction to entertain such claims, and any such claims pending in the courts of the United States shall be dismissed.

Id. at 13 (emphasis added); see Am. Compl. ¶ 68.

The Compact of Free Association Act incorporates the Section 177 Agreement by reference, and reiterates the intent of Congress to achieve a "full and final settlement of all claims described in Articles X and XI of the Section 177 Agreement, and that any such claims be terminated and barred . . . ." See 48 U.S.C. § 1903(g).

C. Prior Court Proceedings

On March 16, 1981, the people of Bikini filed a complaint in this Court's predecessor, the United States Claims Court, seeking, among other things, compensation for an alleged taking of their atoll, and compensation for an alleged breach of an implied in fact contract. Tomaki Juda, et al. v. United States, No. 172-81; see Am. Compl. ¶ 73. Two other groups of Marshall Islanders sought compensation from the United States for damages relating to the nuclear testing program: the people of Enewetak in Johannes Peter, et al. v. United States, Docket No. 461-82L (filed September 15, 1982), and the people of other Northern Marshall atolls and islands directly downwind from the test sites, twelve cases consolidated under the lead case, Limojwa Nitol,

et al. v. United States, Docket No. 453-81L (consolidated on July 20, 1982).

The United States moved to dismiss the complaints in all of these cases. On October 5, 1984, the Claims Court denied the United States' motion to dismiss the complaint, as amended, filed by the Bikinians. Juda v. United States, 6 Cl. Ct. 441 (1984) ("Juda I"). The Court held that the plaintiffs' claims were not barred by the six-year statute of limitations contained at 28 U.S.C. § 2501, because the removal in August 1978 of the Bikinians due to the dangers of radiation on the atoll was a "sufficiently distinct [event] in the temporal sequence to constitute a new and separate taking for purposes of a ruling, in a motion to dismiss[.]" Id. at 450. The Court further found that plaintiffs were "not barred by [the statute of] limitations from an offer of proof of the origin, nature, and content of the alleged implied-in-fact contract and fiduciary relationship, if any, with respect to these claims." Id. at 451. The Court also rejected the Government's arguments concerning sovereign immunity, finding that jurisdiction existed under the Tucker Act over an alleged implied in fact contract imposing fiduciary obligations upon the United States and that neither the Trusteeship Agreement nor any other express contract precluded the existence of an implied contract. Id. at 451-54. Nor could the Government avail itself of the sovereign acts defense because the challenged actions were not of public or general applicability, but rather focused "principally and primarily on the direct relationship with the injured claimant." Id. at 454 (citing Sun Oil Co. v. United States, 572 F.2d 786 (Ct. Cl. 1978); Ottinger v. United States, 88 F.Supp. 881 (Ct. Cl. 1950)). Finally, the Court found that the Fifth Amendment to the United States Constitution applied to the people of the Marshall Islands. Id. at 455-58; see Am. Compl. ¶ 73.

After the Compact Act and the Section 177 Agreement went into effect on or about

October 21, 1986, the Court directed the parties in the Juda, Peter and Nitol cases to submit briefs on whether Congress had withdrawn the consent of the United States to be sued in the Claims Court. See Juda v. United States, 13 C1. Ct. 667, 682-83 (1987) ("Juda II"). In a November 10, 1987 decision, the Court dismissed the complaint on the ground that Article XII of the Section 177 Agreement amends the Tucker Act, thus withdrawing the United States' consent to be sued for these claims. Id. at 689. Based upon the Court's holding in Juda II, the Court also dismissed Peter and Nitol. Peter v. United States, 13 Cl. Ct. 691 (1987); Nitol v. United States, 13 Cl. Ct. 690 (1987).

The people of Bikini (plaintiffs in Juda) appealed the Claims Court's decision dismissing their complaint for lack of jurisdiction. While the appeal was pending, Congress appropriated an additional $90 million for the people of Bikini in 1988. Pub. L. No. 100-466, 1988 H.R. 4867 (Sept. 27, 1988), 102 Stat. 1774; see Am. Compl. ¶ 76. This payment was "in full satisfaction of the obligation of the United States to provide funds to assist in the resettlement and rehabilitation of Bikini Atoll by the People of Bikini," and was conditioned upon:

> One, voluntary dismissal with prejudice of Juda et al. v. United States, No. 88-1206 (Fed. Cir.); and two, submission of written notice to the United States and the Republic of the Marshall Islands . . . that the People of Bikini accept the obligations and undertaking of the United States to make the payments prescribed by this Act, together with the other payments . . . provided for under the Section 177 Agreement, as full satisfaction of all claims of the People of Bikini related in any way to the United States nuclear testing program in accordance with the terms of the Section 177 Agreement.

Pub. L. No. 100-466, supra. Thus, plaintiffs voluntarily dismissed their appeal, with prejudice, as part of a $90 million settlement with the United States. People of Bikini v. United States, 859

F.2d 1482 (Fed. Cir. 1988); see Am. Compl. ¶ 76.

The people of Enewetak (plaintiffs in Peter) along with other Marshall Islanders (plaintiffs in Nitol) appealed from the Claims Court's decisions dismissing their complaints for lack of jurisdiction. See People of Enewetak, Rongelap, and other Marshall Islands Atolls v. United States, 864 F.2d 134 (Fed. Cir. 1988). The Court of Appeals for the Federal Circuit affirmed, concluding that the trial court did not err in finding that, "pursuant to Article XII of the section 177 Agreement, the consent of the United States to be sued in the Claims Court, on appellants' claims arising from the nuclear testing program conducted by the United States in the Marshall Islands, had been withdrawn in conjunction with the establishment of an alternative tribunal to provide just compensation." Id. at 136. The Supreme Court denied a petition for a writ of certiorari. People of Enewetak, et al. v. United States, 491 U.S. 909 (1989).[4]

D. Proceedings Before The Nuclear Claims Tribunal

On September 13, 1993, plaintiffs in this case filed a class action in the Nuclear Claims Tribunal ("Tribunal"), which was established by RMI to determine the nature and extent of the damages resulting from the nuclear testing program and to award compensation from the $150 million Trust Fund. See Am. Compl. ¶ 79. Specifically, the Tribunal was established in 1987 by RMI's Nuclear Claims Tribunal Act, pursuant to the Section 177 Agreement. See Am. Compl., Ex. C at 1. In their complaint to the Tribunal, plaintiffs sought damages for loss of use of Bikini Atoll, restoration costs for cleanup of the atoll, and consequential damages for the people of Bikini. Am. Compl. ¶ 79.

[4] The people of Enewetak recently filed a new lawsuit similar to this action. John, et al. v. United States, Fed. Cl. No. 05-289L.

On March 5, 2001, the Tribunal issued a Memorandum of Decision and Order. Am. Compl., Ex. C. In deciding the property damage claim, the Tribunal stated that "[t]he goal of compensation, where there has been harm to property, should be to make the owner whole through the award of proper damages." Am. Compl., Ex. C at 8. The Tribunal found there was a temporary taking of the atoll by using it as a nuclear testing site and determined that the value for the loss of past and future use was $278 million, adjusted for payments already made under the Section 177 Agreement. Id. at 8-21. Specifically, for loss of use of the atoll from March 1946 to November 1997, the Tribunal determined that "[t]he value of past lost use, adjusted for prior compensation, is $163,730,737." Id. at 18-19. For future loss of use of Bikini Atoll, the Tribunal considered plaintiffs' appraisal report and calculated the present value of future rents on specified acreage, adjusted by a seven percent per annum interest rate, and set off by the present rental value of the lands occupied by the Bikinians and payments under the Section 177 Agreement. Id. at 19-21.

The Tribunal further found that the net award for restoration costs was $251.5 million (id. at 24-35), and for consequential damages for hardships upon the people of Bikini from the nuclear testing program was $33,814,500 (id. at 35-43). See also id. at 2-3; Am. Compl. ¶¶ 80-81. Thus, the Tribunal issued an award in the amount of $563,315,500, after deducting $194,725,000 for compensation and restoration costs already paid to the Bikinians. Id. ¶ 80.

On February 1, 2002, pursuant to the award and Micronesian law, 42 MIRC 123 (see Am. Compl., Ex. C at 44), the Tribunal issued an initial payment of .25 percent of the award, which it subsequently determined to be $1,491,809.43. Am. Compl. ¶¶ 83-84. According to plaintiffs, the Tribunal made another payment on February 4, 2003, in the amount of $787,370, adjusted

based upon a post judgment interest rate of seven percent per annum. Id. ¶ 85.

The Tribunal has effectively exhausted the funds earmarked for judgments in the Section 177 Agreement by making payments toward the awards that were in excess of $88 million. See Id. ¶ 86. Apparently, less than $2 million remains of the original $150 million Trust Fund. Id. ¶ 88.

E. The Changed Circumstances Request And Political Solution

Article IX of the Section 177 Agreement (the "changed circumstances provision") provides:

> If loss or damage to property and person of the citizens of the Marshall Islands, resulting from the Nuclear Testing Program, arises or is discovered after the effective date of this Agreement [October 21, 1986], and such injuries were not and could not reasonably have been identified as of the effective date of this Agreement, and if such injuries render the provisions of this Agreement manifestly inadequate, the Government of the Marshall Islands may request that the Government of the United States provide for such injuries by submitting such a request to the Congress of the United States for its consideration. It is understood that this article does not commit the Congress of the United States to authorize and appropriate funds.

Am. Compl., Ex. B at 11-12; see Am. Compl. ¶ 93.

On September 11, 2000, the RMI government presented to the United States Congress what RMI characterized as a changed circumstances petition pursuant to Article IX. Am. Compl. ¶ 100. RMI requested that the awards granted by the Tribunal be paid by Congress because of changed circumstances and because the Tribunal did not have the funds to pay the awards. Id. On January 24, 2005, in response to Congress' asking the Administration for an evaluation of RMI's request, the Department of State advised Congress that RMI's request did not qualify as

"changed circumstances" within the meaning of Article IX of the Section 177 Agreement. Id.

The governments of the United States and RMI recently negotiated amendments to the Compact for Free Association. Pub. L. No. 108-188, 2003 H.J.Res. 63 (Dec. 17, 2003), 117 Stat. 2720 (codified at 48 U.S.C.A. § 1921 note); see Am. Compl. ¶101. The amended Compact provides, among other things:

> The Compact, as amended, makes no changes to, and has no effect upon, Section 177 of the Compact, nor does the Compact, as amended, change or affect the separate agreement referred to in Section 177 of the Compact including Articles IX and X of that separate agreement, and measures taken by the parties thereunder.

Pub. L. No. 108-188, supra, Tit. I, Art. VII, § 177.

## ARGUMENT

As we demonstrate below, Congress has expressly withdrawn consent to sue with regard to all claims, past, present and future, that arise under, or are in an way related to, the United States' nuclear testing program in the Marshall Islands. Indeed, the Claims Court and the Court of Appeals for the Federal Circuit have reviewed the Compact and the Section 177 Agreement and held that plaintiffs' earlier claims are barred. For the same reasons, and because plaintiffs are bound by these earlier decisions, the complaint must be dismissed for lack of jurisdiction.

Even if the Court could consider plaintiffs' claims, the complaint raises a nonjusticiable political question that is beyond the jurisdiction of this Court to consider and any remedy to which plaintiffs may be entitled may be granted only by Congress. Furthermore, plaintiffs' claims are barred by the six-year statute of limitations applicable to claims in this Court under the Tucker Act. 28 U.S.C. §§ 1491, 2501. For these additional reasons, the case should be dismissed for lack of subject matter jurisdiction.

In addition, even if the Court could exercise jurisdiction over plaintiffs' complaint, plaintiffs fail to state claims upon which relief can be granted because they have failed to allege any act by the Government, at least since 1986, that has deprived them of any property interest thereby defeating their takings claims. Moreover, plaintiffs cannot establish the existence of an implied in fact contract for additional funds because the agreements between RMI and the United States settled all claims arising out of or related to the testing program.

I. The Complaint Must Be Dismissed For Lack Of Jurisdiction

A. Standard Of Review

This Court, like its predecessors, is a court of limited jurisdiction. Phaidin v. United States, 28 Fed. Cl. 231, 233 (1993); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. United States v. Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969). Moreover, "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818 (1988).

The central provision granting consent to suit in this Court is the Tucker Act, which grants subject matter jurisdiction in this Court over claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. "The burden of establishing the court's subject matter

jurisdiction rests with the party seeking to invoke it, . . . as federal courts are presumed to lack jurisdiction unless the record affirmatively indicates to the contrary." Goodrich v. United States, 63 Fed. Cl. 477, 479 (2005) (citing Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002); Renne v. Geary, 501 U.S. 312, 316 (1991)), aff'd, 434 F.3d 1329 (Fed. Cir. 2006).

When deciding a motion to dismiss based on lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. Newby v. United States, 57 Fed. Cl. 283, 290 (2003). Where, as here, the Court lacks jurisdiction over subject matter of the complaint, the correct remedy is dismissal of the action. "[U]nder [Court of Federal Claims] Rule 12(h)(3), this court is mandated to. . . dismiss the action '[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter . . . ." Truckee-Carson Irrigation Dist. v. United States, 14 Cl. Ct. 361, 368 (1988).

B. Congress Withdrew The Jurisdiction Of The Courts To Hear Claims Arising From The Nuclear Testing Program

As plaintiffs acknowledge in their complaint, this Court previously decided that it no longer possesses jurisdiction over claims arising from the nuclear testing program conducted in the Marshall Islands, pursuant to the Compact Act and the Section 177 Agreement. Am. Compl. ¶¶ 74-75; see Juda II, 13 C1.Ct. at 689; Peter, 13 Cl. Ct. 691 (1987); Nitol, 13 Cl. Ct. 690 (1987). The Court of Appeals for the Federal Circuit agreed, adopting the Claims Court's analysis in Juda II. People of Enewetak, 864 F.2d at 136-37. Other courts that have considered the issue also held that the Compact Act and Section 177 Agreement withdraw from courts in the United

States jurisdiction over claims arising from the nuclear testing program. E.g., Antolok v. United States, 873 F.2d 369, 373-79 (D.C. Cir. 1989) (affirming district court's decision to dismiss for lack of jurisdiction Federal Tort Claims Act action brought by residents of the Marshall Islands arising out of the nuclear testing program). Because Congress has not restored jurisdiction over these claims in courts of the United States, this action must be dismissed for lack of subject matter jurisdiction.

Moreover, plaintiffs are bound by the Courts' prior rulings, which addressed the very same issue. The doctrine of res judicata provides that final judgment on a claim extinguishes "'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" Young Eng'rs, Inc. v. United States Int'l Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983) (quoting Restatement (Second) of Judgments § 24 (1982)). "[A] judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Res judicata applies to final judgments involving jurisdiction and statutes of limitations. Hornback v. United States, 405 F.3d 999, 1002 (Fed. Cir. 2005). A second suit will be barred by the doctrine of res judicata if: "(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000). Because each of those criteria has been satisfied here, this case must be dismissed pursuant to the doctrine of res judicata.

1. Identity of the parties. In the complaint in this case, plaintiffs identify themselves as "the people of Bikini Atoll, by and through the Kili/Bikini/Ejit Local Government Council." Am. Compl. at 1 (introduction) and ¶¶ 3-9. Plaintiffs in the original litigation also were members of the Bikini Council. Petition in the Nature of A Class Action for Just Compensation for Unlawful Takings of Property and for Damages for Breaches of Fiduciary Duties, filed Mar. 16, 1981 ("Original Petition") ¶ 3-21, Attached to this motion ("Att.") 2-6. While the individual members of the Council have changed since the initial suit was brought, both cases involve claims brought by the Council and on behalf of its members and the people of Bikini. Compare Am. Compl. ¶¶ 3-9, with Original Petition ¶¶ 3-19 (Att. 2-6). Indeed, Tomaki Juda, the lead plaintiff in the prior litigation, is also a plaintiff in this litigation. Am. Compl. ¶ 8.

2. Final judgment on the merits. The Claims Court dismissed the prior litigation for lack of jurisdiction. In so doing, the Court specifically ruled upon the issue, as raised in the Government's renewed motion to dismiss, of whether "actions by the Marshall Islands people, by Congress, by the [United Nations Trusteeship Council], and by the President, have the effect of withdrawing, as to all plaintiffs, the consent of the United States to be sued under the Tucker Act on these claims." Juda II, 13 Cl. Ct. at 677. The Court found that "[t]he RMI and the United States unquestionably intended that the Section 177 Agreement would be a complete settlement of all claims arising from the nuclear testing program." Id. at 684. The Court cited paragraph (1) of section 103(g) of the Compact Act (codified at 48 U.S.C. § 1903(g)), which plainly states the intention of Congress that the Section 177 Agreement constitutes "a full and final settlement of all claims." Id. The Juda II Court further was persuaded by Article X of the Section 177 Agreement, which states, in pertinent part:

> ESPOUSAL, Section 1 - Full Settlement of All Claims. This Agreement constitutes the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program, and which are against the United States . . . including any of those claims which may be pending [in any forum], including the courts of the Marshall Islands and the courts of the United States and its political subdivisions.

Am. Compl., Ex. B at 12. Because the Section 177 Agreement is a defined term in section 103(g) of the Compact Act, and section 177 of the Compact incorporates by reference the Section 177 Agreement, "[i]t is clear that the Section 177 Agreement and Articles X and XII of that Agreement have the force and effect of law." Juda II, 13 Cl. Ct. at 683.

The Claims Court further made clear that the Compact Act and the Section 177 Agreement withdrew from courts in the United States jurisdiction over claims arising from or related to the nuclear testing program. Id. at 683-90. First, section 103(g) of the Compact Act states that all claims described in Articles X and XI of the Section 177 Agreement shall be "terminated and barred except insofar as provided for in the Section 177 Agreement." Id. at 675 (quoting Compact Act § 103(g)) (emphasis added). Moreover, Article XII provides:

> All claims described in Articles X and XI of this Agreement shall be terminated. No court of the United States shall have jurisdiction to entertain such claims, and any such claims pending in the courts of the United States shall be dismissed.

Am. Compl., Ex. B at 13 (emphasis added). As the Claims Court found:

> This Article does three things: (1) all claims related to the nuclear testing program "shall be terminated"; (2) no court of the United States "shall have jurisdiction to entertain" claims relating to the nuclear testing program; and (3) any such claims pending in the courts of the United States "shall be dismissed."

Juda II, 13 Cl. Ct. at 686 (quoting Art. XII). By its terms, Article XII "applies to all courts of the United States," including this Court. Id. at 689. Accordingly, as the Claims Court held:

> The consent of the United States to be sued in the Claims Court on plaintiffs' takings claims and breach of contract claims that arise from the United States' nuclear testing program in the Marshall Islands has been withdrawn.

Juda II, 13 Cl. Ct. at 690; see also Peter v. United States, 13 Cl. Ct. at 692 (adopting the analysis and holdings of Juda II).[5] Furthermore, the court of appeals, upon plaintiffs' motion, dismissed their appeal, with prejudice, as part of a $90 million settlement with the United States. People of Bikini v. United States, 859 F.2d at 1483.

3. Same set of transactional facts. There can be no genuine dispute that the claims asserted in this action arise out of or are related to the nuclear testing program. As plaintiffs allege in their complaint, the people of Bikini were removed from the atoll in 1946 so that the United States could conduct tests of nuclear weapons. See Am. Compl. ¶¶ 1, 21-23. Plaintiffs' implied contract and breach claims arise from the circumstances of plaintiffs' evacuation and removal from Bikini Atoll in 1946. Id. ¶¶ 107, 111-12, 115-16, 127-28. Plaintiffs further allege that, "[b]etween June 1946 and July 1958, the United States exploded 23 atomic and hydrogen bomb at Bikini Atoll." Id. ¶ 29. According to plaintiffs, the tests "caused severe, extensive, and

---

[5] Plaintiffs also are collaterally estopped from arguing the issue decided against them in Juda II, and adopted by the court of appeals in Enewetak. This is because (1) the issue is identical to the one involved in the prior proceedings; (2) the issue was actually litigated; (3) the courts' determination of lack of jurisdiction was a critical and necessary part of the judgment in the earlier cases; and (4) plaintiffs had a full and fair opportunity in Juda II, to litigate the issue. Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1323 (Fed. Cir. 2003); Bayer AG. v. Biovail Corp., 279 F.3d 1340, 1345 (Fed. Cir. 2002).

long-lasting damage to Bikini Atoll." Id. ¶ 30. During this period, the nuclear weapons tests wholly or partially "vaporized" three islands and portions of others in the atoll. Id. Although temporarily resettled back to Bikini, residents again were evacuated to other islands in 1978. Id. ¶ 37. According to plaintiffs, "[n]umerous radiological surveys of Bikini conducted since late 1978 have concluded that the atoll was - and still is - not safe for human habitation." Id. ¶ 38.

Moreover, plaintiffs seek damages measured by the award granted by the Nuclear Claims Tribunal, which was established to implement the Section 177 Agreement. Id. ¶ 1. Significantly, plaintiffs appended to their complaint the Nuclear Claims Tribunal's March 5, 2001 Memorandum of Decision and Order. Am. Compl., Ex. C. The Tribunal's decision, upon which the complaint is based, further makes clear that plaintiffs' claims arise out of and are related to the nuclear testing program, describing the action as "a class action for and on behalf of the People of Bikini for damage to property resulting from the U.S. Nuclear Testing Program," and awarding damages "arising from the results of these tests." Id. at 1. The damages awarded by the Tribunal include past and future loss of use of Bikini Atoll, restoration costs, and consequential damages for hardships suffered by the people of Bikini. See Am. Compl., Ex. C. Plaintiffs in this litigation seek payment of the amount awarded by the Tribunal, minus the payments made by the Tribunal ($561,036,320), as well as the amount computed by the Tribunal for the taking of the atoll ($278,000,000). Compare Am. Compl. at 36-37 (Prayer for Relief), with Am. Compl., Ex. C. Accordingly, there can be no genuine dispute that the claims asserted by the plaintiffs in this action arise from the United States' nuclear testing program.[6]

---

[6] Plaintiffs have characterized their claims in this case somewhat differently from the prior litigation, now alleging, among other things, a taking of their claims before the Nuclear Claims Tribunal and breach of the 1946 implied contract and duties based upon the United States' allegedly inadequate funding of the Tribunal, where before they alleged an unlawful taking of the atoll and breach of fiduciary duties arising from the United States' actions

Consequently, as held in Juda, Peter and Nitol, the Section 177 Agreement withdraws this Court's jurisdiction to hear all of plaintiffs' claims that arise out of or are related to the nuclear testing program. This action, therefore, must be dismissed in its entirety pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. And, plaintiffs are barred by the doctrine of res judicata from re-arguing this issue.

Because Congress has withdrawn jurisdiction of this Court, and any other court, to hear claims arising out of the nuclear testing program, the Court need not consider any additional arguments prior to dismissing the complaint. However, there are additional grounds for dismissal both upon the basis of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted. We discuss these grounds below.

C. This Action Presents A Nonjusticiable Political Question And Should Be Dismissed Because Only Congress May Grant A Remedy, If Any Is Due

This action raises a nonjusticiable political question and should be dismissed because plaintiffs' remedy, if any remedy is due from the United States, is within the discretion of Congress and the Executive Branch, and not the courts. Plaintiffs allege, among other things, that the United States' failure or refusal to fund adequately the award issued by the Tribunal constitutes a taking of their claims, a breach of fiduciary duties created by the 1946 implied in fact contract, and a breach of implied duties and covenants of that contract. Plaintiffs contend that the United States now is obligated to pay over $561 million more than the amount agreed

beginning in 1946. Compare Am. Compl., with Juda I, 6 Cl. Ct. at 449 (discussing causes of action) and Original Petition (Att. 1-41). However, both actions allege takings and breaches of the 1946 implied in fact contract and involve the same underlying facts.

upon in the Section 177 Agreement, as well as in the 1988 special appropriations for the people of Bikini. The basic tenet underlying plaintiffs' claims, therefore, is that the $150 million and $90 million settlement funds established under the Section 177 Agreement proved inadequate. Because this action challenges the propriety of an agreement entered into by the governments of the RMI and the United States, it should be dismissed pursuant to the political question doctrine.

The United States Supreme Court has long recognized that certain political decisions are committed to the political branches of Government, to the exclusion of the judiciary. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 164 (1803). "The conduct of the foreign relations of our government is committed by the Constitution to the executive and the legislative-'the political'-departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." Oetjen v. Central Lumber Co., 246 U.S. 297, 302 (1918) (citation omitted).

"The nonjusticiability of a political question is primarily a function of the separation of powers." Baker v. Carr, 369 U.S. 186, 210 (1962). The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986). The factors to consider when determining whether the political question doctrine bars jurisdiction include:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of

> a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Baker, 369 U.S. at 217. The Court need only find that one factor is present to conclude that the political question doctrine applies. El-Shifa Pharmaceutical Ind. Co. v. United States, 378 F.3d 1346, 1362 (Fed. Cir. 2004) (citing Baker, 369 U.S. at 217).

This case presents a number of the factors. Plaintiffs' attack upon the Section 177 Agreement – an agreement that was negotiated and executed by the Executive Branch and approved by Congress – calls into question the conduct of United States foreign relations. Moreover, plaintiffs challenge the Compact Act and the Section 177 Agreement, which were negotiated between the United States and RMI. These types of government-to-government negotiations are "within the sole authority of the Executive." Kwan v. United States, 272 F.3d 1360, 1364 (Fed. Cir. 2001) (rejecting as a political question claims brought by Koreans who fought in the Vietnam conflict seeking funds allegedly owed under a commitment letter between the United States and the Republic of Korea); see also Antolok v. United States, 873 F.2d at 379-84 (Sentelle, J.) (discussing the political question doctrine as an alternative ground to dismiss tort claims arising from the nuclear testing program). Thus, there is a "textually demonstrable constitutional commitment of the issue" to Congress and the Executive Branch, the first Baker factor. 369 U.S. at 217. Because this action challenges the propriety of an agreement entered into by the governments of RMI and the United States, it should be dismissed pursuant to the political question doctrine.

In addition, the Court could not undertake independent resolution of the claims without expressing lack of respect due coordinate branches of Government, or the potentiality of "embarrassment from multifarious pronouncements by various departments on one question." Id.; see also Schroder v. Bush, 263 F.3d 1169, 1174-75 (10th Cir. 2001) (applying the political question doctrine where "multifarious pronouncements by various departments" of Government would lead to confusion and disarray, were the court to make policy decisions in a subject area devoid of judicially discoverable standards). These factors are particularly applicable in this case because Article IX of the Section 177 Agreement provides an avenue for presenting a request to Congress for its consideration. The RMI has availed itself of that avenue.

Allowing this action to proceed would express disrespect for both the Legislative and Executive Branches of Government. It would signal to Congress this Court's belief that Congress will not appropriately act upon RMI's request for additional funds. Moreover, allowing this action to proceed would express disrespect for the prior Administration and Congress that negotiated, entered into, and enacted the Compact, the Section 177 Agreement, and the Compact Act. The fourth Baker factor, therefore, mandates dismissal.

Furthermore, permitting this action to proceed would create a significant risk of "multifarious pronouncements by various departments" of Government because RMI's request remains pending before Congress. Baker, 369 U.S. at 217. This Court could render a decision that directly conflicts with Congress' disposition of RMI's request, causing confusion, embarrassment, and more litigation. This action, therefore, should be dismissed pursuant to the sixth Baker factor. See id.; see also Nixon v. United States, 506 U.S. 224, 252-53 (1993) (Justice Souter concurring in the judgment) (action seeking declaratory judgment that the Senate

unconstitutionally failed to give a full evidentiary hearing in impeachment proceedings was properly dismissed under the political question doctrine because of the "potentiality of embarrassment from multifarious pronouncements by various departments on one question," among other factors (quoting Baker, 369 U.S. at 217)).

Because the propriety of international agreements, such as the Compact and Section 177 Agreement that plaintiffs challenge, falls within the discretion of Congress and the Executive Branch, this action raises a political question and must be dismissed. If not dismissed, it would be impossible to decide the issues presented without showing a lack of respect for both Congress and the Executive Branch, and there is a real risk of causing embarrassment from multifarious decisions.

D. Plaintiffs' Claims Also Are Barred By The Statute Of Limitations

Even if the Court could somehow overlook the plain meaning and effect of the Compact and the Section 177 Agreement and consider the political question raised by the complaint, plaintiffs' claims are untimely and must be dismissed for lack of subject matter jurisdiction. The consent to suits against the United States in this Court is limited by 28 U.S.C. § 2501, which provides:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

The Court's six-year statute of limitations has been held to constitute a "condition" upon the sovereign's consent to suit. Soriano v. United States, 352 U.S. 270, 276 (1957); accord John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1355 (Fed. Cir. 2006) (section 2501 creates a jurisdictional prerequisite to Court of Federal Claims' jurisdiction); Insurance Co. of

North America v. United States, 121 F. Supp. 649, 651 (Ct. Cl. 1954). Therefore, failure to comply with the statute of limitations places the claim beyond the Court's power to consider it. United States v. Mottaz, 476 U.S. 834, 841 (1986); Soriano, 352 U.S. at 273; Martinez v. United States, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc) ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature." (citations omitted)).

Here, all of plaintiffs' claims accrued more than six years before the filing of their complaint on April 11, 2006. See L.S.S. Leasing Corp. v. United States, 695 F.2d 1359, 1365 (Fed. Cir. 1982) (claim accrues when all events have occurred that are necessary to fix the liability of the Government and entitle the claimant to demand payment and sue for money); Lins v. United States, 688 F.2d 784, 786 (Ct. Cl. 1983). Because the actions of the United States which are the subject of the complaint became effective no later than October 21, 1986, when the Compact agreements took effect, these claims are untimely and should be dismissed. See Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478 (Fed. Cir. 1994).

In Alliance, the United States and Mexico had entered into an agreement in 1941 providing for the final settlement of claims of both Mexicans and Texans for land along the border between these countries. Id. at 1480. The United States and Mexico reciprocally cancelled and declared "satisfied all claims, of whatsoever nature, of nationals of each country against the Government of the other . . . ." Id. While the United States satisfied the claims of its citizens, in 1989, Mexico determined that it would not compensate claimants under the 1941 Treaty. Id. at 1481. Heirs and descendants of the original Mexican grantees brought suit against the United States in this Court in 1990, alleging a taking of their Texas land grant claims. Id.

The Court found that the claimants did not satisfy the statute of limitations, and the Court of Appeals for the Federal Circuit affirmed. Id. at 1481, 1483.

The claimants in Alliance alleged that the United States took their "property interest in a legal cause of action." Id. at 1481. The court of appeals held that the plaintiffs' claims accrued in April 1942, the effective date of the Treaty that by its terms released the United States from all claims from Mexican citizens. Id. at 1482. Although Mexico declined to pay compensation on the plaintiffs' claims in 1989, that event "does not affect the accrual date of claimants' claim." Id. Noting that the Fifth Amendment requires that the United States, not a foreign sovereign, commit the taking action, the Court found that United States' ratification of the 1941 Treaty extinguishing all claims of Mexican nationals "alone satisfies the axiomatic requirement that the United States itself must undertake specific action alleged to take private property." Id. Mexico's decision to forgo payment "created no liability for the United States." Id.

Similarly, here, plaintiffs' claims accrued and the limitations period began to run no later than October 21, 1986, when the Compact Act and Section 177 Agreement became effective. When the Compact took effect, any relief that plaintiffs may have sought from the United States arising out of the nuclear testing program was discharged. Accordingly, plaintiffs' claims are untimely and should be dismissed for lack of jurisdiction, pursuant to 28 U.S.C. § 2501.

Plaintiffs attempt to come within the statute of limitations in various ways. First, in counts I-III, they allege that the United States' failure or refusal to fund adequately the Nuclear Claims Tribunal's award issued on March 5, 2001, constituted a taking of their claims without just compensation, Am. Compl. ¶ 104; a breach of fiduciary duties imposed by the 1946 implied contract, id. ¶¶ 111-12; and a breach of implied duties and covenants of the contract, id. ¶¶ 115-

16. However, the United States did not take any action affecting plaintiffs on March 5, 2001. Rather, the independently established Tribunal determined the award amount on that date. As discussed above, plaintiffs really are complaining about the amounts appropriated by the United States under the Compact, which was effective in 1986, see id. ¶ 60; the $150 million Trust Fund, and the distribution amounts to the people of Bikini, established pursuant to the Section 177 Agreement, which was signed by the respective governments on or about June 25, 1983 and effective in 1986, id. ¶ 66; and the additional $90 million paid to the people of Bikini pursuant to legislation enacted on September 27, 1988, id. ¶ 76. All of these events occurred well before April 11, 2000, which is six years before the original complaint in this case was filed.

It is clear from plaintiffs' complaint that all of the grounds upon which it is based arose from and are related to the United States' nuclear testing program, including the evacuation of the people of Bikini from their atoll, beginning in 1946. The Claims Court held in Juda I that plaintiffs' 1981 complaint was not barred by the statute of limitations because the evacuation of Bikinians in 1978 due to radiation dangers was "sufficiently distinct in the temporal sequence to constitute a new and separate taking" for purposes of denying the Government's motion to dismiss. Juda I, 6 Cl. Ct. at 450. The Court also determined that the statute of limitations could not be raised to bar what it found to be plaintiffs' cognizable claims for breach of fiduciary duties arising from an implied in fact contract created in 1946 because some of the claims involved transactions that occurred within the statutory period. Id. at 451. Obviously, it has been significantly longer than six years since plaintiffs were again evacuated from their atoll or any of these transactions occurred. Thus, the Court's earlier rulings on the statute of limitations are inapplicable here.

Plaintiffs continue to rely upon the 1946 implied contract and resulting fiduciary duties as giving rise to various breach claims. Am. Compl. ¶¶ 107, 111-12 (count II), 115-16 (count III), and 127-28 (count VI). However, any implied in fact contract with the United States was replaced by, and any fiduciary and implied duties extinguished by, the Compact Act and the Section 177 Agreement. As the Claims Court held in plaintiffs' earlier action, "the Compact Act, the Compact and the Section 177 Agreement constitute a redefinition of the legal relationship between the United States and the people of the Marshall Islands. This relationship is defined by the domestic law of the two governments." Juda II, 13 Cl. Ct. at 683. As we demonstrate above, because the Compact agreements became effective in 1986, plaintiffs' implied contract and breach claims are untimely.

Plaintiffs allege, however, that the Compact agreements constitute a taking of the Bikini Atoll and other property without just compensation and breaches of the fiduciary duties created by the 1946 implied in fact contract by failing adequately to fund the Tribunal's award. Am. Compl. ¶¶ 123 (count V) and 127 (count VI). Plaintiffs allege that these claims did not accrue or the statute of limitations was equitably tolled until January 24, 2005, when the Department of State submitted a report to Congress advising that RMI's request did not qualify as "changed circumstances" within the meaning of the Section 177 Agreement. Id. ¶¶ 124, 128; see also ¶ 100. Under plaintiffs' theory of claim accrual, their claims in counts V and VI actually would not be ripe, because there has been no final Government decision on RMI's request. See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-94 (1985) (a claim that a Government regulation effects a taking of property is not ripe until the Government agency implementing the regulation has reached a final decision on the

application of the regulation to the property at issue). To the contrary, plaintiffs' claims accrued when the Compact Act took effect on or about October 21, 1986, and they expired six years later on or about October 21, 1992. Therefore, plaintiffs claims in counts V and VI also are untimely.[7]

Plaintiffs' theory of tolling is equally faulty. Because the statute of limitations is jurisdictional, it cannot be waived or equitably tolled. Cf I.K. Frazer v. United States, 288 F.3d 1347, 1352-53 (Fed. Cir. 2002) (the Federal Circuit has not determined whether 28 U.S.C. § 2501 can ever be tolled or waived). Because section 2501 permits tolling only in two specific instances (where plaintiff is under a legal disability or beyond the seas), there is a strong inference that Congress did not intend the statute to be tolled under any other circumstances. See United States v. Johnson, 529 U.S. 53, 58 (2000). Thus, the six-year statute of limitations for bringing Tucker Act claims before this Court is not subject to equitable tolling.

Even if equitable tolling could be applied to 28 U.S.C. § 2501, plaintiffs have failed to allege facts which, if proved, would be sufficient to do so in this case. Tolling is available where the claimant has diligently pursued judicial remedies by filing a defective pleading within the statutory period or has been induced or tricked by the defendant into letting the deadline pass. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

There is no basis to contend that they filed a defective pleading. As recognized by the Claims Court, the Compact Act did not totally extinguish plaintiffs' claims, but provided an alternative, non-judicial forum – the Nuclear Claims Tribunal – to hear those claims. Juda II, 13

---

[7] For the same reason, plaintiffs' claim that they are third party beneficiaries of the Compact agreements that the United States allegedly breached by inadequate funding (count IV) is untimely, even assuming for argument's sake that they could establish third-party beneficiary status.

Cl. Ct. at 684 (citing Lynch v. United States, 292 U.S. 571, 583 (1934)). Plaintiffs pursued that process. In addition, RMI has submitted a request to Congress for additional funding. To the extent plaintiffs have recourse for seeking funds under or in addition to those provided under the Compact Act, the Section 177 Agreement and the 1988 appropriation, such remedies are with Congress and not with this or any other court.

Nor can plaintiffs establish the second ground for tolling. As the Court of Appeals for the

Federal Circuit has made clear, the grant of equitable tolling is exceptionally rare.

> To toll the statute of limitations, a claimant must show either “that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date."

Alliance, 37 F.3d at 1482 (quoting Japanese War Notes Claimants Ass'n of the Philippines, Inc. v. United States, 373 F.2d 356, 359 (Ct. Cl. 1967)).

Clearly, plaintiffs were aware of the Compact agreements and their impact upon their claims, as well as the procedures for bringing their claims to the Tribunal and the amounts appropriated under the agreements, well before April 11, 2000, which is six years before they filed their complaint in this case. Article IX of the Section 177 Agreement established the conditions under which RMI could request additional funds from Congress based upon “changed circumstances,” as defined in that provision. Am. Compl., Ex. B at 11-12. Moreover, Article IX clearly states that it “does not commit the Congress of the United States to authorize and appropriate funds.” Id. at 12. Article X states without equivocation that “[t]his agreement constitutes the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way

related to the Nuclear Testing Program, and which are against the United States." Id. Article XII removes jurisdiction to entertain such claims from the courts of the United States. Id. at 13.

In addition, plaintiffs voluntarily dismissed their earlier litigation, with prejudice, specifically as a condition of Congress' appropriation of an additional $90 million, which was "for the sole purpose of implementing and fulfilling the terms of the Section 177 Agreement." Pub. L. No. 100-466, 1988 H.R. 4867 (Sept. 27, 1988), 102 Stat. 1774. See Am. Compl. ¶ 76; Bikini, 859 F.2d at 1483. Receipt of this additional funding was conditioned upon written acknowledgment "that the People of Bikini accept the obligations and undertaking of the United States to make the payments prescribed by this Act, together with the other payments . . . provided for under the Section 177 Agreement, as full satisfaction of all claims of the People of Bikini related in any way to the United States nuclear testing program in accordance with the terms of the Section 177 Agreement." Pub. L. No. 100-466, supra; see Am. Compl. ¶ 76.

Thus, plaintiffs were well aware of the Compact agreements and their impact upon their claims. Plaintiffs have failed to allege, and cannot establish, that the United States concealed its position regarding the effect of the Compact agreements upon their claims or the amount of funds to be made available under them. Therefore, even if 28 U.S.C. § 2501 were subject to equitable tolling, plaintiffs cannot establish that tolling would be appropriate here.

## II. The Complaint Also Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted

As we have demonstrated, this Court does not possess jurisdiction to entertain plaintiffs' claims pursuant to the Compact Act, the Section 177 Agreement and binding precedent, because Congress has withdrawn jurisdiction of the courts to address plaintiffs' claims. In addition, the

complaint raises a nonjusticiable political question, and plaintiffs' claims are untimely and the statute of limitations cannot be equitably tolled. Assuming, for argument's sake, plaintiffs can establish subject matter jurisdiction over any of their claims, the complaint still should be dismissed for failure to state a claim upon which relief can be granted. RCFC 12(b)(6).

A. Standard Of Review

This Court has the authority to dismiss a complaint for failure to state a claim pursuant to RCFC 12(b)(6). A complaint should be dismissed for failure to state a claim where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Advanced Cardiovascular Sys., Inc. v. SciMed LifeSys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993).

B. Plaintiffs Fail To Allege The Occurrence Of Any Federal Government Act Since 1986 That Has Deprived Them Of Any Property Interest

As discussed above, plaintiffs' allegations hinge upon the United States' entry into the Compact agreements in 1986 and, therefore, they are barred by, among other reasons, the six-year statute of limitations. Additionally, plaintiffs fail to allege the occurrence of any Federal Government act since 1986 that has deprived them of any property interest. Therefore, plaintiffs' taking claims (counts I and V) also should be dismissed because they fail to state a claim upon which relief may be granted.

The Federal Circuit has developed a two-part test to determine whether a taking has occurred. See American Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003)). First, "the court must determine whether the claimant has established a property interest for purposes

of the Fifth Amendment." American Pelagic, 379 F.3d at 1372; see also Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004). If the court identifies a valid property interest, then "the court must determine whether the government action at issue amounted to a compensable taking of that property interest." American Pelagic, 379 F.3d at 1372; see also Adams, 391 F.3d at 1218. Any takings claim against the United States must be based upon acts of the Federal Government. Applegate v. United States, 35 Fed. Cl. 406, 422 (1996); see also Correlated Dev. Corp. v. United States, 556 F.2d 515, 522-25 (Ct. Cl. 1977); D.R. Smalley & Sons, Inc. v. United States, 372 F.2d 505, 507 (Ct. Cl. 1967) (citing Horowitz v. United States, 267 U.S. 458, 461 (1925)). Because the Compact agreements and the funds provided under them are in full settlement of all of plaintiffs' claims, plaintiffs cannot establish a property interest in receiving additional funds, including payment of the amount awarded by the Tribunal. Even assuming that plaintiffs could allege a cognizable property interest that would satisfy the first prong of this two-part test, they fail to allege any action of the Federal Government that deprived them of any property interest.

As discussed above, plaintiffs' allegation that the Government's failure to fund adequately the award of the Nuclear Claims Tribunal constituted a taking of their claims or, alternatively, that the Compact agreements constituted a taking of Bikini Atoll and other property, arose at the latest when the Compact agreements took effect in 1986. The Tribunal's issuance of its award decision on March 5, 2001 does not constitute an act by the United States that deprived them of any property interest. In addition, the State Department's January 2005 report was an evaluation requested by Congress in connection with Congress' consideration of RMI's request under Article IX of the Section 177 Agreement. Article IX explicitly states that

"[i]t is understood that this Article does not commit the Congress of the United States to authorize and appropriate funds." Am. Compl., Ex. B at 12. The January 2005 report, therefore, falls far short of an affirmative Federal act that deprives plaintiffs of any property interest. See Smalley, 372 F.2d at 508 (plaintiff failed "to allege a single affirmative act on the part of the [United States] that deprived it of any of its property nor that interfered with or disturbed its property rights in any way. Without such allegations, plaintiff cannot recover damages from the [United States on a takings theory]."); see also Correlated Dev. Corp., 556 F.2d at 523 (United States not liable for a taking where it provided funds for housing project). Other than entering into the bilateral agreements with RMI in 1986, plaintiffs fail to identify any affirmative act by the United States that even potentially could result in a taking.

Plaintiffs, here, cannot avoid the fact that their own government agreed to the amounts specified in the Compact agreements. Thus, if plaintiffs have any viable claim, it is against RMI, and not the United States. Because plaintiffs fail to identify any affirmative act by the United States that potentially could result in a taking, counts I and V should be dismissed for failure to state a claim, pursuant to RCFC 12(b)(6).

C. Plaintiffs Cannot Establish An Implied In Fact Contract For Additional Funds Because The Compact Agreements Constitute Full Settlement Of All Claims Arising Out Of Or Related To The Nuclear Testing Program

Plaintiffs also fail to allege claims pursuant to their implied in fact contract theories upon which relief may be granted. See Am. Compl., Counts II, III, IV and VI. As demonstrated above, any implied in fact contract that may have existed between the United States and the people of Bikini was terminated in 1986 by the Compact agreements. The Claims Court held in

plaintiffs' earlier action that

> the Compact Act, the Compact and the Section 177 Agreement constitute a redefinition of the legal relationship between the United States and the people of the Marshall Islands. This relationship is defined by the domestic law of the two governments. Both the RMI and the United States, since October 21, 1986, have been proceeding in reliance upon the new relationship. In addition, plaintiffs in these cases have pursued legal and financial benefits in reliance on the Compact being in effect.

Juda II, 13 Cl. Ct. at 683. The Court recognized that the "thrust of the Compact Act [was] to discharge United States obligations to promote the development of the Marshall Island peoples toward self-government," and that the settlement of claims contained in the agreements is integral to this new relationship. Id. "To carve out the Section 177 Agreement would amount to a restructuring of the legal relationship that has been recognized by the Congress, the President, and the [United Nations Trusteeship Council]." Id.

As the Federal Circuit explained in Alliance when rejecting the plaintiffs' implied in fact contract argument in that case, "[a]n implied-in-fact contract with the Government requires: (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance." Alliance, 37 F3d at 1483 (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)). Because the "Treaty itself explicitly exempted the United States from 'any and all liability' for these claims," the Alliance Court found no evidence of an implied in fact contract with the Mexican claimants. Id. Similarly, because the Compact agreements explicitly settle all claims against the United States, "past, present and future," that are "based upon, arise out of, or are in any way related to the Nuclear Testing Program," there plainly is no "mutuality of intent to contract" to provide additional funding to the people of Bikini by the United States,

other than through the proscribed procedures in the agreements. Am. Compl., Ex. B at 12. Plaintiffs, therefore, cannot establish the existence of an implied in fact contract for the United States to provide additional funding.

Plaintiffs' implied contract and breach claims, including their third-party beneficiary claim (count IV), also fail because both the 1946 implied in fact contract and the Compact agreements deal with the same subject matter, that is compensation for the effects of the United States' nuclear testing program. As this Court has noted:

> The Federal Circuit . . . has repeatedly instructed that "[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract."

L.P. Consulting Group, Inc. v. United States, 66 Fed. Cl. 238, 242 (2005) (quoting Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990) (other citations omitted)).

Thus, plaintiffs have failed to alleged implied in fact contract claims for which they are entitled to any additional relief from the United States. Accordingly, the Court should dismiss these claims pursuant to RCFC 12(b)(6).

## CONCLUSION

For the foregoing reasons, we respectfully request the Court to dismiss plaintiffs' complaint, in its entirety, for lack of subject matter jurisdiction. In the alternative, we request the Court to dismiss the complaint for failure to state claims upon which relief can be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

Of Counsel:

BRUCE K. TRAUBEN
Trial Attorney
Environment and Natural
Resources Division
U.S. Department of Justice

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640
E-mail: kathryn.bleecker@usdoj.gov

September 15, 2006

Attorneys for Defendant

**Certificate of Filing**

I hereby certify that on September 15, 2006, a copy of foregoing "Defendant's Motion To Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Kathryn A. Bleecker