**NO. 06-288C (Judge Block)**

---

**IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS**

---

**PEOPLE OF BIKINI, BY AND THROUGH**
**THE KILI/BIKINI/EJIT**
**LOCAL GOVERNMENT COUNCIL, et al.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**KATHRYN A. BLEECKER**
**Assistant Director**
**U.S. Department of Justice**
**Civil Division**
**Commercial Litigation Branch**
**1100 L Street, N.W., 8th Floor**
**Washington, D.C. 20530**
**Tele: (202) 307-6290**
**Fax: (202) 514-8640**
**E-mail: kathryn.bleecker@usdoj.gov**

**OF COUNSEL:**

**BRUCE K. TRAUBEN**
**Trial Attorney**
**Environment and Natural Resources Division**
**U.S. Department of Justice**

**January 30, 2007**

**Attorneys for Defendant**

# TABLE OF CONTENTS

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Plaintiffs' Claims Have Been Fully Settled And Validly Released . . . . . . . . . . . . 4

II. Plaintiffs' Challenge To The Validity Of The Section177
Agreement Raises Nonjusticiable Political Questions . . . . . . . . . . . . . . . . . . . . . . . 6

III. Congress Withdrew Jurisdiction To Adjudicate Plaintiffs'
Claims In Exchange For Settlement Of All Plaintiffs' Claims
Arising Under The Nuclear Testing Program . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. Congress Properly Exercised Its Authority To Withdraw
Jurisdiction Over Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

B. The Plain Language Of Article XII Conclusively Establishes
That Jurisdiction Has Been Withdrawn . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C. Plaintiffs' Claims Were Not Preserved Through The Earlier
Litigation And Plaintiffs Are Bound By The Courts' Rulings . . . . . . . . . 15

IV. Plaintiffs' Claims Also Are Barred By The Statute Of Limitations . . . . . . . . . . 17

V. Plaintiffs Fail To State Claims Upon Which Relief Can Be Granted . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

## TABLE OF AUTHORITIES

**CASES:** **PAGES:**

Alliance of Descendants of Texas Land Grants v. United States,
37 F.3d 1478 (Fed. Cir. 1994) . . . . . . . . . . 20

American Pelagic Fishing Co., L.P. v. United States,
379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . 19

Antolok v. United States,
873 F.2d 369 (D.C. Cir. 1989) . . . . . . . . . . 8, 11

Baker v. Carr,
369 U.S. 186 (1962) . . . . . . . . . . passim

Baltimore & Ohio Ry. Co. v. United States,
298 U.S. 349 (1936) . . . . . . . . . . 12

Battaglia v. General Motors Corp.,
169 F.2d 254 (2d Cir. 1948) . . . . . . . . . . 11

Bayer AG. v. Biovail Corp.,
279 F.3d 1340 (Fed. Cir. 2002) . . . . . . . . . . 17

Blanchette v. Connecticut Gen. Ins. Corp.,
419 U.S. 102 (1974) . . . . . . . . . . 10

Christianson v. Colt Indstr. Operating Corp.,
486 U.S. 800 (1988) . . . . . . . . . . 16, 18

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . 20

Craddock d/b/a/ Southern Hearing Co. v. United States,
230 Ct. Cl. 991 (1982) . . . . . . . . . . 5

Dames & Moore v. Regan,
453 U.S. 654 (1981) . . . . . . . . . . 11

Dana v. E.S. Originals, Inc.,
342 F.3d 1320 (Fed. Cir. 2003) . . . . . . . . . . 17

Estate of Cowart v. Nicklos Drilling Co.,
505 U.S. 469 (1992) . . . . . . . . . . 14

Gold Bondholders Protective Council Inc. v. United States,
676 F.2d 643 (Ct. Cl. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Guaranty Trust Co. of New York v. United States,
304 U.S. 126 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gulf Power Co. v. United States,
187 F.3d 1324 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hornback v. United States,
405 F.3d 999 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Irwin v. Dep't of Veterans Affairs,
498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Japan Whaling Ass'n v. Am. Cetacean Soc'y,
478 U.S. 221 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

John R. Sand & Gravel Co. v. United States,
457 F.3d 1345 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Juda v. United States,
13 Cl. Ct. 667 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Juda v. United States,
6 Cl. Ct. 411 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jung v. Ass'n of Am. Med. Colleges,
339 F.Supp.2d 26 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Kwan v. United States,
272 F.3d 1360 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Laker Airways Ltd. v. Sabena, et al.,
731 F.2d 909 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Langenegger v. United States,
756 F.2d 1565 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lynch v. United States,
292 U.S. 571 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Nitol v. United States,
13 Cl. Ct. 690 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Office of Personnel Management v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Parklane Hosiery Co., Inc. v. Shore,
439 U.S. 322 (1979) . . . . . . . . . . 16

People of Bikini v. United States,
859 F.2d 1482 (Fed. Cir. 1988) . . . . . . . . . . 3, 6

People of Enewetak v. United States,
864 F.2d 134 (Fed. Cir. 1988) . . . . . . . . . . passim

Peter v. United States,
13 Cl. Ct. 691 (1987) . . . . . . . . . . 3

Plaut v. Spendthrift Farm, Inc.,
514 U.S. 211 (1925) . . . . . . . . . . 13

Ruckelshaus v. Monsanto Co.,
467 U.S. 986 (1984) . . . . . . . . . . 10

Soriano v. United States,
352 U.S. 270 (1957) . . . . . . . . . . 17

United States v. Belmont,
301 U.S. 324 (1937) . . . . . . . . . . 8

United States v. Klein,
80 U.S. 128 (1871) . . . . . . . . . . 13

United States v. Pink,
315 U.S. 203 (1942) . . . . . . . . . . 8

Young Eng'rs, Inc. v. United States Int'l Trade Comm'n,
721 F.2d 1305 (Fed. Cir. 1983) . . . . . . . . . . 16

**STATUTES:**

28 U.S.C. § 2501 . . . . . . . . . . 17, 18

**MISCELLANEOUS:**

131 Cong. Rec. H11,829
(daily ed. Dec. 11, 1985) . . . . . . . . . . 15

Pub. L. No. 99-239, 99 Stat. 1770
(Jan. 14, 1986) . . . . . . . . . . 2, 14

Pub. L. No. 100-466, 1988 H.R. 4867
(Sept. 27, 1988), 102 Stat. 1774 . . . . . . . . . . 3, 6

Restatement (Second) of Judgments § 24 (1982) . . . . . . . . . . 17

Restatement (Second) of Judgments § 26(b)(1982) . . . . . . . . . . 16

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PEOPLE OF BIKINI, BY AND THROUGH THE KILI/BIKINI/EJIT LOCAL GOVERNMENT COUNCIL, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | No. 06-288C |
| v. | ) | (Judge Block) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

As we demonstrated in our motion to dismiss, plaintiffs' amended complaint should be dismissed for lack of subject matter jurisdiction because Congress withdrew jurisdiction of the courts to hear claims arising from the United States' nuclear testing program conducted in the Marshall Islands from the late 1940s to the mid-1950s, the case presents a nonjusticiable political question and plaintiffs' claims are barred by the statute of limitations. We further demonstrated, in the alternative, that plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted.

In their opposition, plaintiffs contend that the jurisdiction-limiting provision of the Section 177 Agreement was conditioned upon the "valid settlement and release" of their claims, their claims were not validly released and, therefore, jurisdiction was not validly withdrawn and the Court possesses jurisdiction to consider whether they have been accorded just compensation. Plaintiffs argue that these contentions do not present a political question and that the courts' prior dismissal of their claims for lack of jurisdiction based upon the congressional withdrawal of jurisdiction does not bar them from bringing this action. Finally, they argue that they are not

barred by the statute of limitations because they were required to exhaust their remedies before returning to this Court, and that the amended complaint states causes of action upon which relief can be granted. See Memorandum of the People of Bikini Atoll in Opposition to Defendant's Motion to Dismiss ("Opp.").

As we demonstrate below, plaintiffs' arguments are without merit and their amended complaint should be dismissed in its entirety.

ARGUMENT

As discussed in detail in our opening brief, pursuant to the Compact of Free Association and related agreements, the United States accepted responsibility for compensating the citizens of the Marshall Islands for loss or damage resulting from the nuclear testing program and established a comprehensive compensation plan as full settlement of all claims related to the testing program.[1] To implement the compensation plan, the United States obligated $150 million to establish a fund to provide "in perpetuity, a means to address past, present and future consequences of the Nuclear Testing Program." Amd. Compl., Ex. B at 2. The fund was designed to be permanently invested and the proceeds distributed on an annual basis as described in the Section 177 Agreement. Id. at 3-7.

Establishment of the trust fund and the various programs designed to provide financial and other forms of compensation to the people of the Marshall Islands, was intended to be in full

[1] This action involves the Compact of Free Association and its related agreements, that were made part of United States law by the Compact of Free Association Act of 1985 ("Compact Act"), Pub. L. No. 99-239, 99 Stat. 1770 (1986). Most relevant here is the Agreement Between the Government of the United States and the Government of the Marshall Islands for the Implementation of Section 177 of the Compact of Free Association ("Section 177 Agreement") (attached as Ex. B to Amd. Compl.).

settlement of all claims related to the nuclear testing program. Id. at 12. Thus, the Section 177 Agreement established a claims adjudication process to further "the desire of the Government of the Marshall Islands to provide an additional long-term means for compensating claims resulting from the Nuclear Testing Program." Id. at 8. In addition, Congress withdrew jurisdiction from all courts in the United States to hear claims arising from the nuclear testing program. Id.

In the earlier litigation by these plaintiffs, the Claims Court explicitly upheld Congress' withdrawal of jurisdiction. Juda v. United States, 13 Cl. Ct. 667, 689-90 (1987) (Juda II); see People of Enewetak v. United States, 864 F.2d 134 (Fed. Cir. 1988) (affirming Peter v. United States, 13 Cl. Ct. 691 (1987) and Nitol v. United States, 13 Cl. Ct. 690 (1987), and adopting the analyses in Juda II), cert. denied 491 U.S. 909 (1989). The Bikini plaintiffs dismissed their appeal of Juda II, with prejudice, in exchange for Congress' appropriation of an additional $90 million in 1988, and agreed that this appropriation, in addition to the payments under the Section 177 Agreement, were "in full satisfaction of the obligation of the United States to provide funds to assist in the resettlement and rehabilitation of Bikini Atoll by the People of Bikini." Pub. L. No. 100-466, 1988 H.R. 4867 (Sept. 27, 1988), 102 Stat. 1774; People of Bikini v. United States, 859 F.2d 1482 (Fed. Cir. 1988).

As the Compact agreements make clear, the Section 177 Agreement was intended to settle all claims arising from the nuclear testing program and to extinguish the courts' jurisdiction through the establishment of an administrative process for adjudicating claims and a perpetual fund for payment of claims and other compensation. The agreements also make clear that any recourse plaintiffs may have for obtaining additional funding is with Congress.

I. Plaintiffs' Claims Have Been Fully Settled And Validly Released

Plaintiffs challenge the validity of the espousal of their claims under the Section 177 Agreement. The Executive Branch negotiated the Compact and the Section 177 Agreement and determined that the claims were validly espoused; Congress accepted this determination by specifically enacting the Compact Act. It is simply beyond the authority of this, or any, Court to second-guess these determinations.

Article X of the Section 177 Agreement provides, in relevant part, that "[t]his Agreement constitutes the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program . . . including any of those claims which may be pending or which may be filed in any court or other judicial or administrative forum." Am. Compl., Ex. B at 12. The Claims Court recognized that "RMI [the Republic of the Marshall Islands] and the United States unquestionably intended that the Section 177 Agreement would be a complete settlement of all claims arising from the nuclear testing program." Juda II, 13 Cl. Ct. at 684. In recognizing the significance of the Compact agreements, the Claims Court stated:

> The thrust of the Compact Act is to discharge the United States obligations to promote the development of the Marshall Island peoples toward self-government. The settlement of claims arising from the nuclear testing program was an integral part of the relationship of the United States and the newly emerged RMI. The settlement cannot be disregarded as if it were not essential to that relationship. To carve out the Section 177 Agreement would amount to a restructuring of the legal relationship that has been recognized by the Congress, the President, and the [United Nations Trusteeship Council].

Juda II, 13 Cl. Ct. at 683. A court "cannot refuse to enforce a law its political branches have

already determined is desirable and necessary." Laker Airways Ltd. v. Sabena, et al., 731 F.2d 909, 949 (D.C. Cir. 1984) (emphasis omitted). The Court should reject plaintiffs' invitation to examine the relationship between the United States and the government of the Marshall Islands as expressed in the Compact agreements.

Under contract law, the Court will enforce the provision of a release where the language is "clear and unambiguous, and on its face operates as a bar to all claims not specifically reserved by plaintiff." Craddock d/b/a/ Southern Hearing Co. v. United States, 230 Ct. Cl. 991, 994 (1982). Plaintiffs contend that, pursuant to RCFC 8(c), release is an affirmative defense that must be established by the Government by "invoking the international law of espousal." Opp. 18. While claiming that it is premature to address the issue, plaintiffs argue that the release is invalid because (1) it violates the United States' fiduciary obligations under the United Nations trusteeship agreement; (2) RMI could not espouse their claims because it was not a sovereign at the time of espousal; and (3) RMI could not espouse claims while remedies in the United States remained available to plaintiffs. Opp. 19. As we demonstrate below, the Court does not possess jurisdiction to consider these types of political questions.

To the extent that plaintiffs now contend that the United States violated its obligations under the United Nations trust arrangement, it is for the United Nations, and not the Court, to address such matters. Similarly, the Court should not entertain plaintiffs' efforts to challenge the authority of the Marshall Islands government to settle the claims of its citizens. After the Compact and related agreements were signed by the governments of the United States and Marshall Islands, they were presented for a vote "in plebiscites monitored by international observers from the United Nations Trusteeship Counsel," and a majority of the citizens of the

Marshall Islands approved the agreements. Juda II, 13 Cl. Ct. at 673. Thus, a majority of the citizens of the Marshall Islands approved the Compact, including the espousal of claims contained in Article X. Plaintiffs' efforts not to be bound by this vote because they claim to have voted against the agreements, Opp. 3, must be rejected.

Moreover, these plaintiffs subsequently voluntarily and unequivocally waived all of their claims in exchange for Congress' appropriation of an additional $90 million in 1988. Pub. L. No. 100-466, supra. This payment was conditioned upon written acknowledgment that "the People of Bikini accept the obligations and undertaking of the United States to make the payments prescribed by this Act, together with the other payments, rights, entitlements and benefits provided for under the Section 177 Agreement, as full satisfaction of all claims of the People of Bikini related in any way to the United States nuclear testing program in accordance with the terms of the Section 177 Agreement." Id. As further required by this legislation, plaintiffs dismissed their earlier appeal. Id.; People of Bikini v. United States, 859 F.2d at 1483.

Although plaintiffs mention this legislation, they fail to address this additional release of their claims. Even if there were any validity to their contention that they are not bound by the government of the Marshall Islands' espousal, they cannot credibly dispute that they voluntarily accepted the $90 million payment, in addition to the funding provided pursuant to the Section 177 Agreement, as "full satisfaction" of their claims.

## II. Plaintiffs' Challenge To The Validity Of The Section 177 Agreement Raises Nonjusticiable Political Questions

Plaintiffs are, in effect, asking this Court to invalidate an international claims settlement agreement that was entered into between the governments of the United States and the Marshal

Islands as an integral part of a full restructuring of their political relations. Despite plaintiffs' efforts to characterize this as a traditional takings and breach case, their brief belies this contention. To address plaintiffs' arguments that their claims were not validly released, the Court must go beyond simply interpreting the Compact Act and Agreement, or determining what amount of compensation is just. Indeed, plaintiffs allege that the "Compact and the Section 177 Agreement were not the product of arms-length negotiations between international sovereigns," Opp. 19, and that "the United States exploited its trust relationship with the RMI to place coercive pressure on the RMI." Opp. 21. Plaintiffs also would have this Court determine that RMI did not have the authority to espouse plaintiffs' claims because it was not a sovereign government at the time, and that "RMI prevented the people of Bikini from exhausting their local law (*i.e.*, U.S) remedies against the United States." Opp. 22.

These types of political and policy questions, especially as related to international relations and treaty obligations, are beyond the power of this or any Court to consider. Baker v. Carr, 369 U.S. 186, 211 (1962); Juda II, 13 Cl. Ct. at 678. "The nonjusticiability of a political question is primarily a function of the separation of powers." Baker v. Carr, 369 U.S. at 210; Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986) ("The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch. The Judiciary is particularly ill suited to make such decisions.").

Plaintiffs challenge not only the Marshall Island government's settlement authority, but also the United States' authority to recognize a particular foreign government as having the

capacity to act. Plaintiffs' attack upon the United States' recognition of foreign governments "so strongly defies judicial treatment that without executive recognition a foreign state has been called 'a republic of whose existence we know nothing.'" Baker v. Carr, 369 U.S. at 212. As the Supreme Court has recognized:

> What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government. Objections to its determination as well as to the underlying policy are to be addressed to it and not to the courts.

Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 137-38 (1938). Courts will "not stop to inquire what the 'actual' authority of those diplomatic representatives may have been." Id. at 139. Moreover, the Supreme Court has expressly held that the power to recognize a foreign sovereign necessarily includes the power to negotiate and settle claims of nationals, and a diplomatic agreement accomplishing those ends conclusively binds the courts. United States v. Pink, 315 U.S. 203 (1942); United States v. Belmont, 301 U.S. 324 (1937).

Plaintiffs also call into question the negotiations leading up to the Compact and Section 177 Agreement, a function "within the sole authority of the Executive." Kwan v. United States, 272 F.3d 1360, 1364 (Fed. Cir. 2001). In reviewing the same agreements at issue here, the D.C. Circuit held that "the decision of the political branches expressed in the Compact negotiated and entered by the Executive and approved by the Legislative Branch is within the area of foreign relations committed by the Constitution to the political branches." Antolok v. United States, 873 F.2d 369, 381 (D.C. Cir. 1989).

Thus, there is a "textually demonstrable constitutional commitment of the issue" to Congress and the Executive Branch, the first factor in determining that a case involves a political

question. Baker v. Carr, 369 U.S. at 217. See our motion to dismiss at 23-25 addressing other Baker factors. As plaintiffs recognize, the only way the Court can award plaintiffs the relief they are seeking is to first find that the espousal provisions of the Compact and the Section 177 Agreement are invalid.[2] Plaintiffs' efforts to have the Court invalidate these agreements present nonjudiciable political questions that are beyond the Court's authority to adjudicate.

## III. Congress Withdrew Jurisdiction To Adjudicate Plaintiffs' Claims In Exchange For Settlement Of All Plaintiffs' Claims Arising Under The Nuclear Testing Program

### A. Congress Properly Exercised Its Authority To Withdraw Jurisdiction Over Plaintiffs' Claims

Plaintiffs argue that it would be unconstitutional for Congress to withdraw all judicial review of their takings claims absent a judicial determination of the adequacy of the compensation and the validity of the espousal provisions. Contrary to plaintiffs' contentions, it is well-settled that Congress has the power both to grant rights to individuals and to withdraw the consent of the United States to be sued. Lynch v. United States, 292 U.S. 571, 582 (1934); Juda II, 13 Cl. Ct. at 688-89. The sovereign's immunity from suit applies regardless of whether the rights emanate from the Constitution or a statute. Lynch, 292 U.S. at 581-82. The consent to sue

---

[2] For this reason, plaintiffs' reliance upon Langenegger v. United States, 756 F.2d 1565 (Fed. Cir. 1985), is misplaced. The Federal Circuit found that the claim of United States citizens alleging that the United States was responsible for the expropriation of their property in El Salvador pursuant to that country's agrarian reform program, was justiciable as a takings claim against the United States, but that plaintiffs had failed to show that their claims had been extinguished and that they should look to international law to resolve the matter. Id. at 1572-73. The case did not involve any government-to-government negotiations. The court specifically found that resolution of the claims did not require judicial determination of El Salvador's sovereignty or the appropriateness of its actions, or question the Executive's authority to undertake the acton. Id. at 1569. Unlike plaintiffs' claims here, the question in Langenegger was "of narrow focus, requiring no second-guessing of the executive branch or detailed inquiry into the ulterior motives of the two governments." Id. at 1570.

the United States is a "privilege accorded, not the grant of a property right protected by the Fifth Amendment." Id. at 581. Congress' power to withdraw that privilege "applies alike to causes of action arising under acts of Congress . . . and to those arising from some violation of rights conferred" by the Constitution. Id. at 582 (citations omitted).

Plaintiffs contend, however, that the language in Lynch is dicta and that the Supreme Court has never held that consent to sue for a taking can be withdrawn. Opp. 12 n.5. However, in Gold Bondholders Protective Council Inc. v. United States, 676 F.2d 643 (Ct. Cl. 1982), the Court of Claims, relying upon Lynch and other cases, held that Congress' withdrawal of consent to suit does not violate constitutional rights and, in particular, does not constitute a taking of a property right in violation of the Fifth Amendment. Id. at 646; see also Juda II, 13 Cl. Ct. at 689-90 (citing Gold Bondholders with approval, and rejecting plaintiffs' criticism of this decision).

The cases relied upon by plaintiffs to the contrary did not involve the explicit withdrawal of jurisdiction. Nor did the Supreme Court uphold the validity of alternative forums "only by preserving a judicial remedy under the Tucker Act for any shortfall in the compensation awarded through such alternative remedy," as plaintiffs contend. Opp. 11. For instance, in Ruckelshaus v. Monsanto Co., 467 U.S. 986 (1984), the Supreme Court found that Congress had not clearly withdrawn Tucker Act jurisdiction and refused to infer the withdrawal of such jurisdiction. Id. at 1017. It did not find that Congress could never explicitly withdraw Tucker Act jurisdiction. Similarly in Blanchette v. Connecticut Gen. Ins. Corp., 419 U.S. 102 (1974), the Court found that nothing in the statute in that case, or its legislative history, could be construed to withdraw the remedy under the Tucker Act. As the Court of Appeals for the Federal Circuit noted, the Supreme Court in Blanchette "did not hold that a fallback Tucker Act claim was necessary to

sustain the constitutionality of every alternative procedure for compensation." People of Enewetak, 864 F.2d at 137.

Dames & Moore v. Regan, 453 U.S. 654 (1981), relied upon extensively by plaintiffs, also does not support plaintiffs' argument. There, the Supreme Court upheld the President's authority to nullify attachments that United States' nationals had obtained against Iran, to order the transfer of Iranian assets and to terminate the plaintiffs' claims based upon certain statutes, as well as Congress' acquiescence in the President's authority to settle claims by United States nationals against foreign governments. Id. at 675-77. The Court noted the importance of respecting the separation of powers principles, particularly involving matters of international crisis and relations between sovereign nations. Id. at 668-69, 679. The Court did not address whether Congress had authority to withhold or withdraw jurisdiction of the courts over the plaintiffs' claims. The Court observed that there was "no jurisdictional obstacle to an appropriate action" under the Tucker Act to challenge the suspension of claims against Iran. Id. at 689-90. Accordingly, the Supreme Court's acknowledgment that a takings claim could be brought in the Claims Court was simply a recognition that that right had not been explicitly withdrawn.[3]

As long as the United States' obligations are recognized, Congress may limit the individual to administrative remedies; "it is under no obligation to provide a remedy through the court." Lynch, 292 U.S. at 582; see Juda II, 13 Cl. Ct. at 689. Accord Antolok, 873 F.2d at 374

[3] As they did in the earlier litigation, plaintiffs also rely upon Battaglia v. General Motors Corp., 169 F.2d 254 (2d Cir. 1948), to support their contention that Congress cannot limit courts' ability to vindicate constitutional rights. As the Claims Court noted, Battaglia involved private parties and did not involve withdrawal of the consent to sue the United States. Juda II, 13 Cl. Ct. at 688.

("It is simply too late in the day to assert that Congress lacks the power to deprive the inferior federal courts of subject matter jurisdiction over the present claims. The language of the [Compact Act] statute and [the Section 177] Agreement are simply too plain to deny that Congress expressed this very intent in the present case."). As the Claims Court recognized, Congress did not intend to take plaintiffs' right to just compensation or their right to obtain damages for breach of contract, as distinguished from removal of the remedy. Juda II, 13 Cl. Ct. at 683-84, citing Lynch, 292 U.S. at 583.

Plaintiffs rely upon several Supreme Court cases as support for their contention that it is for the judiciary, not Congress, to determine the amount of just compensation and that Congress cannot "set a cap on just compensation." Opp. 12-14. In Baltimore & Ohio Ry. Co. v. United States, 298 U.S. 349 (1936), after discussing many of the other Supreme Court cases relied upon by plaintiffs in this case, the Supreme Court stated that the "just compensation clause may not be evaded or impaired by any form of legislation," and that Congress may not "finally determine the amount that is safeguarded . . . by that clause." Id. at 368. The requirements of the Fifth Amendment are met if the individual has "a full hearing before the court or other tribunal empowered to perform the judicial function." Id. at 369.

Congress did not set a cap on the amount of compensation or determine the amount owed to the Marshall Islanders as a result of the nuclear testing program. Rather, the Section 177 Agreement established a self-generating fund to provide compensation and a claims adjudication process, including appointment of a claims tribunal "to render a final determination upon all claims past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based on, arise out of, or are in any way related to the Nuclear Testing Program."

Amd. Compl., Ex. B at 8.[4] Thus, the cases relied upon by plaintiffs are unavailing.

Plaintiffs also argue that Congress cannot legislate the outcome of pending litigation, citing, among other cases, United States v. Klein, 80 U.S. 128 (1871). Opp. 14. Plaintiffs have "confused the holding in the Klein case with the long-established power of Congress to withdraw its consent to sue the United States." Gold Bondholders, 676 F.2d at 646; see also Juda II, 13 Cl. Ct. at 687 (noting that, among other things, "Klein did not involve a complete withdrawal of the consent to sue, or the substitution of an alternative procedure for compensation").[5] Thus, Congress properly exercised its authority to withdraw the United States' consent to suit in the courts upon these claims.

B. The Plain Language Of Article XII Conclusively Establishes That Jurisdiction Has Been Withdrawn

As the Court held in Juda II, "[i]t is clear that Article XII was intended to withdraw the consent to suit by plaintiffs on the claims in these cases." 13 Cl. Ct. at 689. Article XII of the Section 177 Agreement provides "[a] ll claims described in Articles X and XI of this Agreement shall be terminated. No court of the United States shall have jurisdiction to entertain such

---

[4] The Agreement also contains provisions for the Marshall Islands government to seek additional funds from Congress if loss or damage arises or is discovered after the effective date of the Agreement (the "Changed Circumstances" provision), and for amendments to the Agreement "at any time by mutual consent." Id. at 11-12, 14.

[5] The other cases relied upon by plaintiffs as prohibiting Congress from affecting the outcome of pending litigation also are irrelevant to this case. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1925) (discussing retroactivity of legislation); Gulf Power Co. v. United States, 187 F.3d 1324, 1333 (11th Cir. 1999) (noting that there was "no constitutional problem with a process that employs an administrative body, such as the FCC, to determine just compensation in the first instance."); and Jung v. Ass'n of Am. Med. Colleges, 339 F.Supp.2d 26, 41-42 (D.D.C. 2004) (rejecting the same argument as made here that, under Klein, Congress may not constitutionally assume the judicial function by legislating the outcome of a pending action). None of these cases assist plaintiffs in this case.

claims, and any such claims pending in the courts of the United States shall be dismissed." Am. Compl., Ex. B at 13. "[W]hen a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992)(citation omitted). There is nothing equivocal about this language - "Article XII by its terms applies to all courts of the United States." Juda II, 13 C1. Ct. at 689; see also People of Enewetak, 864 F.2d at 136.

Apparently recognizing the difficulties of refuting the plain language, plaintiffs argue that the "legal effect of Article XII . . . depends on Section 103(g)(2)" of the Compact Act. Opp. 9. Contrary to plaintiffs' contention, the meaning and purpose of section 103(g) is straightforward and expressly ratifies the approach adopted in Articles X and XII. Section 103(g), the "Espousal Provisions," provides:

> (1) It is the intention of the Congress of the United States that the provisions of section 177 of the Compact of Free Association and the . . . [Section 177 Agreement] constitute a full and final settlement of all claims described in Articles X and XI of the Section 177 Agreement, and that any such claims be terminated and barred except insofar as provided in the Section 177 Agreement.
> (2) In furtherance of the intention of Congress as stated in paragraph (1) of this subsection, the Section 177 Agreement is hereby ratified and approved. It is the explicit understanding and intent of Congress that the jurisdictional limitations set forth in Article XII of such Agreements are enacted solely and exclusively to accomplish the objective of Article X of such Agreement and only as a clarification of the effect of Article X, and are not to be construed or implemented separately from Article X.

PL 99-239, 1986 HJRes 187 (codified at 48 U.S.C.A. § 1901 note).

Plaintiffs argue that the final sentence of subsection (2) means that if the espousal of claims in Article X is found to be invalid, then the jurisdiction-limiting provision of Article XII

also is without effect. However, neither that sentence in isolation, nor section 103(g) as a whole, supports their assertion. As the Claims Court recognized in Juda II, "[t]he Section 177 Agreement cannot be carved out of the Compact and its validity separately determined." 13 Cl. Ct. at 683. Articles X and XII of the Agreement operate together to accomplish that end by settling the underlying claims and terminating the related court cases. The final sentence of section 103(g)(2) confirms that these provisions operate together to implement the agreed-upon settlement.[6]

Accordingly, plaintiffs simply cannot overcome the plain meaning and affect of the Section 177 Agreement's withdrawal of jurisdiction.

C. Plaintiffs' Claims Were Not Preserved Through The Earlier Litigation And Plaintiffs Are Bound By The Courts' Rulings

Plaintiffs argue that the prior court decisions "left the door open" for them to return to Court if the alternative remedy proved to be inadequate. Opp. 5. In dismissing their earlier complaint, the Claims Court stated that plaintiffs' assertions as to the adequacy of the compensation provided through the Section 177 Agreement were "premature" and could not be determined "at this time," and that the alternative procedure could "not be challenged judicially

[6] Plaintiffs attempt to bolster their argument by citing to a single statement made on the floor of the House that if Article X is invalid claims covered by the espousal provision would remain justiciable in United States courts. Opp. at 9-10, quoting 131 Cong. Rec. H11,829 (daily ed. Dec. 11, 1985). The Claims Court addressed this exact same argument and concluded that, while various statements made by legislators concerning the Compact were contradictory, it was clear that there was a "compromise that did not embody the language plaintiffs had sought and that the provision as passed by the House was rejected. As enacted, the terms of paragraph (2) of Section 103(g) actually contradict plaintiffs' argument." Juda II, 13 Cl. Ct. at 685. In interpreting section 103(g), the Claims Court found that "[p]aragraph 2 of Compact Act § 103(g) is silent on the question of validity of espousal. Article XII is not made contingent upon a judicial determination of the validity of espousal in Article X." Id. at 686.

until it has run its course." Juda II, 13 Cl. Ct. at 689. Similarly, the Federal Circuit repeated this language, and indicated that it was "unpersuaded that judicial intervention is appropriate at this time." People of Enewetak, 864 F.2d at 136. Plaintiffs would have the Court interpret this dicta to mean that plaintiffs could return to the Court after pursuing their claims before the claims tribunal.

It is well-settled that a court cannot confer jurisdiction where none exists. Christianson v. Colt Indstr. Operating Corp., 486 U.S. 800, 817-18 (1988). Thus, even if the courts' language could be interpreted as plaintiffs assert, it cannot overcome either the clear language of the Agreement or the holding of the prior decisions. As we demonstrated in our opening brief, plaintiffs are bound by the holding of the Claims Court that the "consent of the United States to be sued in the Claims Court on plaintiffs' taking claims and breach of contract claims that arise from the United States nuclear testing program in the Marshall Islands has been withdrawn." Juda II, 13 Cl. Ct. at 690.[7] Plaintiffs have not cited to any statute restoring jurisdiction.

As demonstrated in our motion to dismiss, plaintiffs are barred by the doctrine of res judicata from relitigating the validity and affect of the jurisdiction-withdrawing provision. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5 (1979) ("a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action"); Young Eng'rs, Inc. v. United States Int'l Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983)(final judgment on a claim extinguishes "'all rights of the plaintiff to remedies against the

[7] Plaintiffs contend that this was a "qualified dismissal" and that their claims were somehow preserved. Nothing in the decisions of Claims Court or the Federal Circuit demonstrates that the courts "expressly reserved" plaintiffs' right to maintain a later action in this Court. See Restatement (Second) of Judgments § 26(b)(1982).

defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose'") (quoting Restatement (Second) of Judgments § 24 (1982)). Res judicata applies to final judgments involving jurisdiction and statutes of limitations. Hornback v. United States, 405 F.3d 999, 1001-02 (Fed. Cir. 2005).

Moreover, the Claims Court specifically addressed many of the same arguments as plaintiffs are raising here. Accordingly, plaintiffs also are collaterally estopped from rearguing the issues decided against them in Juda II, and adopted by the court of appeals in Enewetak, to the extent that (1) the issue is identical to the one involved in the prior proceedings; (2) the issue was actually litigated; (3) the prior determination of the issue was a critical and necessary part of the judgment; and (4) plaintiffs had a full and fair opportunity to litigate the issue. Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1323 (Fed. Cir. 2003); Bayer AG. v. Biovail Corp., 279 F.3d 1340, 1345 (Fed. Cir. 2002). As is clear from our citations to the earlier rulings, the Claims Court rejected plaintiffs' arguments on many of the same issues raised in their opposition brief and the court of appeals expressly adopted the Court's analysis. Plaintiffs should not be allowed to relitigate any of those issues in this suit.

## IV. Plaintiffs' Claims Also Are Barred By The Statute Of Limitations

As we demonstrate in our opening brief, the Court also should dismiss this case because plaintiffs' claims are barred by the six-year statute of limitations. 28 U.S.C. § 2501. See Soriano v. United States, 352 U.S. 270, 276 (1957) (the statute of limitations is a condition upon the sovereign's consent to suit); John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1355 (Fed. Cir. 2006) (section 2501 creates a jurisdictional prerequisite to Court of Federal Claims' jurisdiction). Here, plaintiffs' claims accrued and the limitations period began to run no later

than October 21, 1986, when the Compact and Section 177 Agreement became effective.

Plaintiffs argue that they were required to exhaust their remedies through the claims tribunal before returning to this Court and that, therefore, their claims are timely. Opp. 7, 35. Plaintiffs argue further that the United States should be estopped from asserting the statute of limitations because the Government allegedly persuaded the courts that takings claims were not ripe in the earlier litigation. Opp. 6 and n.1. Because the statute of limitations is jurisdictional, neither the parties nor the Court can waive this limitation on the Court's jurisdiction.[8] See Christianson, 486 U.S. at 817-18. Furthermore, estoppel generally is not available against the Government. Office of Personnel Management v. Richmond, 496 U.S. 414, 419 (1990).

Similarly, plaintiffs' arguments that the statute of limitations should be equitably tolled are unavailing. As demonstrated in our motion to dismiss, the statute of limitations is jurisdictional and cannot be tolled and, even if 28 U.S.C. § 2501 were subject to tolling, plaintiffs cannot meet the requirements for tolling set out in Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Plaintiffs argue that their earlier suit is akin to their having filed a defective pleading, one of the bases for tolling under Irwin. Opp. 37. The Claims Court originally found that plaintiffs had timely made allegations within the Court's jurisdiction, Juda v. United States, 6 Cl. Ct. 441 (1984) ("Juda I"), but subsequently dismissed plaintiffs' original complaint because the Compact Act and the Section 177 Agreement withdrew jurisdiction of the courts to consider plaintiffs' claims. Juda II, 13 Cl. Ct. at 690. Thus, plaintiffs cannot avail themselves of the

[8] Contrary to plaintiffs' assertion, the United States did not argue in the prior litigation that these takings claims were not ripe, but that it was premature to facially attack on constitutional grounds the Section 177 Agreement. See People of Enewetak, 864 F.2d at 136 (citing Juda II, 13 Cl. Ct. at 689).

"defective pleading" ground for tolling. And, as we have shown above and in our motion to dismiss, they cannot establish the other ground for tolling under Irwin, that they were induced by the Government into allowing the time to lapse.

V. Plaintiffs Fail To State Claims Upon Which Relief Can Be Granted

In addition to being beyond the Court's subject matter jurisdiction, plaintiffs have failed to state claims upon which relief can be granted. Because the Compact agreements and the funds paid under them, are in full settlement of all of plaintiffs' claims, plaintiffs cannot establish a property interest in receiving additional funds, including payment of the amount awarded by the Tribunal.

Even assuming that plaintiffs could allege a cognizable property interest, they fail to allege any action of the Federal Government that deprived them of any property interest. See American Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (requiring a claimant to establish both a valid property interest, as well as "whether the government action at issue amounted to a compensable taking of that property interest."). Plaintiffs have alleged no action by the United States affecting any property interest since, at the latest, the execution of the Compact agreements in the 1980s or the 1988 additional appropriation. Plaintiffs urge that their takings claims accrued "at the earliest" on the date of the tribunal's award, March 5, 2001. Opp. 38. That action was taken by the claims tribunal, an independent tribunal established by the government of the Marshall Islands. It was not acting upon behalf of the United States and its actions cannot be attributed to the United States Government.

Therefore, "plaintiffs can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Accordingly, plaintiffs' takings claims (counts I and V of the amended complaint) also should be dismissed for failure to state a claim upon which relief can be granted. RCFC 12(b)(6).

Similarly, because the Compact agreements explicitly were intended to settle all claims against the United States, there plainly is no mutuality of intent to contract to provide additional funding to the people of Bikini by the United States, other than through the proscribed procedures in the agreements. Plaintiffs, therefore, cannot establish the existence of an implied in fact contract for the United States to provide additional funding. See Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478, 1483 (Fed. Cir. 1994). Thus, plaintiffs' remaining counts (II, III, IV and VI) which are based upon an implied in fact contract, also must be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim.

## CONCLUSION

For the foregoing reasons and those proved in our motion to dismiss, we respectfully request the Court to dismiss plaintiffs' complaint, in its entirety, for lack of subject matter jurisdiction. In the alternative, we request the Court to dismiss the complaint for failure to state claims upon which relief can be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

Of Counsel:

BRUCE K. TRAUBEN
Trial Attorney
Environment and Natural
Resources Division
U.S. Department of Justice

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 307-6290
Fax: (202) 514-8640
E-mail: kathryn.bleecker@usdoj.gov

Attorneys for Defendant

January 30, 2007

**Certificate of Filing**

I hereby certify that on January 30, 2007, a copy of foregoing "Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion To Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Kathryn A. Bleecker