| | | |
|---|---|---|
| 1994 | $1,091,000 | Interior/Enewetak Agriculture/Support |
| 1995 | $1,089,000 | Interior/Enewetak Agriculture/Support |
| 1996 | $1,091,000 | Interior/Enewetak Agriculture/Support |
| 1997 | $1,091,000 | Interior/Enewetak Agriculture/Support |
| 1998 | $1,191,000 | Interior/Enewetak Agriculture/Support |
| 1999 | $1,576,000 | Interior/Enewetak Agriculture/Support |
| 2000 | $1,191,000 | Interior/Enewetak Agriculture/Support |
| 2001 | $1,388,000 | Interior/Enewetak Agriculture/Support |
| Total | $146,167,000 | ($273,370,000 in '03 funds) |

## **Rongelap[3] Projects**

Section 103(i) of the Compact of Free Association Act of 1985 acknowledges the U.S. Government's responsibility to "restore Rongelap island ... so that it can be safely inhabited." Moreover, in this section of the Compact Act, the Congress authorized "[s]uch sums as are necessary ... as to steps needed to restore the habitability of Rongelap Island ... to be made available to the Government of the Marshall Islands."

| Year | Amount | USG Source/Purpose |
|---|---|---|
| | Trust Fund | |
| 1954-02 | 55,174,000 | Radiological and health monitoring. |
| 1992 | 1,975,000 | This figure includes $493,700 from the FY 1992 Department of the Interior and Related Agencies Appropriations Act (PL 102-154) to be spent for improving the living conditions of the Rongalapese on Mejatto. |
| 1993 | 1,983,000 | |
| 1994 | 1,983,000 | |
| 1995 | 783,000 | Interior/In addition to the $1,200,000 appropriated in FY 1995 (PL 102-332) so that the Rongelap Atoll Local Government (RALGov) Council could hire a competent counsel, an experienced city manager to put RALGov's Administration in order, especially its financial records, and build democratic institutions. |
| 1995 | 5,000,000 | Defense |
| Total | $66,898.000 | (Plus $5,000,000 in potential earnings) ($71,440,000 in '03 funds) |

[3] The AEC/ERDA/DOE estimated expenditures for the environmental and special medical program from 1954 through 2002 is $137,935,000 for the four atolls - Bikini, Enewetak, Rongelap, and Utrik. Rongelap Atoll environmental activities cost $16,552,200. The special medical program mandated by section 103(h)(1) of the Compact Act for the population of Rongelap and Utrik exposed to radiation from the 1954 "Bravo" test cost $38,621,800.

| | Grants | |
|---|---|---|
| 1996 | 6,403,000 | |
| | 20,000,000 | Reprogrammed in 1996 |
| Total | $26,403,000 | ($31,160,000 in '03 funds) |

**Utrik Projects**

| Year | Amount | USG Source/Purpose |
|---|---|---|
| 1954-02 | $20,690,000 | Radiological and health monitoring. |
| 1970-94[4] | | Energy/radiological and health monitoring |
| 1970-94 | | Agriculture/Surplus Commodity Food Program |
| 1984 | $1,000,000 | Energy (P.L. 97-257)/Four Atoll Health Program |
| 1985 | $22,500,000 | Interior (P.L. 99-239)/Nuclear Claims Compensation |
| Total | $44,190,000 | ($61,810,000 '03 funds) |

## Appendix C: Descriptions of Federal Radiation Exposure Programs

DEPARTMENT OF JUSTICE (RADIATION EXPOSURE COMPENSATION ACT)

On October 15, 1990, Congress passed the Radiation Exposure Compensation Act (the "Act"), 42 U.S.C. § 2210 note (1994), providing for

[4] The AEC/ERDA/DOE estimated expenditures for the environmental and special medical program from 1954 through 2002 is $137,935,000 for the four atolls - Bikini, Enewetak, Rongelap, and Utrik. Utrik Atoll environmental activities cost $4,138,050. The special medical program mandated by section 103(h)(1) of the Compact Act for the population of Rongelap and Utrik exposed to radiation from the 1954 "Bravo" test cost $16,552,200. Total expenditures for environmental and medical care were $20,690,250.

compassionate payments to individuals who contracted certain cancers and other serious diseases as a result of their exposure to radiation released during above-ground nuclear weapons tests or as a result of their exposure to radiation during employment in underground urnium mines. Implementing regulations were issued by the Department of Justice and published in the Federal Register on April 10, 1992, establishing procedures to resolve claims in a reliable, objective, and non-adversarial manner, with little administrative cost to the United States or to the person filing the claim. Revisions to the regulations, published in the Federal Register on March 22, 1999, served to greater assist claimants in establishing entitlement to an award.

On July 10, 2000, P.L. 106-245, the "Radiation Exposure Compensation Act Amendments of 2000," was enacted. Some of the widespread changes include new claimant populations, additional compensable diseases, lower radiation exposure thresholds, modified medical documentation requirements, and removal of certain disease restrictions. There are now five categories of claimants: uranium miners, uranium millers, ore transporters, downwinders, and onsite participants. Each category requires similar eligibility criteria: exposure to radiation and existence of a compensable disease.

Uranium Miners: RECA 2000 specifies a payment of $100,000 to eligible individuals employed in an above-ground or underground uranium mine located in Colorado, New Mexico, Arizona, Wyoming, South Dakota, Washington, Utah, Idaho, North Dakota, Oregon, and Texas at any time during the period beginning on January 1, 1942, and ending on December 31, 1971. Additional mining states may be included for compensation upon application.

A. Exposure. The claimant must have been exposed to 40 or more working level months (WLMs) of radiation while employed in a uranium mine.

B. Disease. Compensable diseases include primary lung cancer and certain non-malignant respiratory diseases.

Uranium Millers: RECA 2000 specifies a payment of $100,000 to eligible individuals employed in an uranium mill located in Colorado, New Mexico, Arizona, Wyoming, South Dakota, Washington, Utah, Idaho, North Dakota,

Oregon, and Texas at any time during the period beginning on January 1, 1942, and ending on December 31, 1971.

A. Exposure. The claimant must have worked for at least one year during the relevant time period.

B. Disease. Compensable diseases include primary lung cancer, certain non-malignant respiratory diseases, renal cancer, and other chronic renal disease including nephritis and kidney tubal tissue injury.

Ore Transporters: RECA 2000 specifies a payment of $100,000 to eligible individuals employed in the transport of uranium ore or vanadium-uranium ore from mines or mills located in Colorado, New Mexico, Arizona, Wyoming, South Dakota, Washington, Utah, Idaho, North Dakota, Oregon, and Texas at any time during the period beginning on January 1, 1942, and ending on December 31, 1971.

A. Exposure. The claimant must have worked for at least one year during the relevant time period.

B. Disease. Compensable diseases include primary lung cancer, certain non-malignant respiratory diseases, renal cancer, and other chronic renal disease including nephritis and kidney tubal tissue injury.

Downwinders: The Act specifies a payment of $50,000 to an individual who was physically present in one of the affected areas downwind of the Nevada Test Site during a period of atmospheric nuclear testing, and later contracted a specified compensable disease.

A. Exposure. The claimant must have lived or worked downwind of atmospheric nuclear tests in certain counties in Utah, Nevada and Arizona for a period of at least two years during the period beginning on January 21, 1951, and ending on October 31, 1958, or, for the period beginning on June 30, 1962, and ending on July 31, 1962. The designated affected areas are: in the State of Utah, the counties of Beaver, Garfield, Iron, Kane, Millard, Piute, San Juan, Sevier, Washington, and Wayne; in the State of Nevada, the counties of Eureka, Lander, Lincoln, Nye, White Pine, and that portion of Clark County that consists of townships 13 through 16 at ranges 63 through 71; and in the State of Arizona, the counties of Apache, Coconino, Gila, Navajo, and Yavapai.

B. Disease. After such period of physical presence, the claimant contracted one of the following specified diseases: leukemia (other than chronic lymphocytic leukemia), lung cancer, multiple myeloma, lymphomas (other than Hodgkin's disease), and primary cancer of the thyroid, male or female breast, esophagus, stomach, pharynx, small intestine, pancreas, bile ducts, gall bladder, salivary gland, urinary bladder, brain, colon, ovary, or liver (except if cirrhosis or hepatitis B is indicated).

Onsite Participants: The Act specifies a payment of $75,000 to individuals who participated onsite in a test involving the atmospheric detonation of a nuclear device, and later developed a specified compensable disease.

A. Exposure. The claimant must have been present "onsite" above or within the official boundaries of the Nevada, Pacific, Trinity, or South Atlantic Test Sites at any time during a period of atmospheric nuclear testing and must have "participated" during that time in the atmospheric detonation of a nuclear device.

B. Disease. After the onsite participation, the claimant contracted one of the following specified diseases: leukemia (other than chronic lymphocytic leukemia), lung cancer, multiple myeloma, lymphomas (other than Hodgkin's disease), and primary cancer of the thyroid, male or female breast, esophagus, stomach, pharynx, small intestine, pancreas, bile ducts, gall bladder, salivary gland, urinary bladder, brain, colon, ovary, or liver (except if cirrhosis or hepatitis B is indicated).

VETERANS ADMINISTRATION

Presumptive Program: Veterans who participated in nuclear tests by the U.S. including certain underground tests at Amchitka Island, Alaska, prior to January 1, 1974, or who served with the U.S. occupation forces in Hiroshima or Nagasaki, Japan, between August 1945 and July 1946, or who were prisoners of war in Japan, or some who served at the gaseous diffusion plants listed above are eligible for compensation for cancers specified in federal law. The 21 types of cancer covered under the presumptive program are: all forms of leukemia except chronic lymphocytic leukemia; cancer of the thyroid, bone, brain, breast, colon, lung, ovary, pharynx, esophagus, stomach, small intestine, pancreas, bile ducts, gall bladder, salivary gland and urinary tract (kidneys, renal pelvis, ureter, urinary bladder and urethra);

lymphomas (except Hodgkin's disease); multiple myeloma; primary liver cancer; and bronchio-alveolar carcinoma (a rare lung cancer).

Non-presumptive Program: For radiation-related diseases not covered in the presumptive program, regulations provide for consideration of disability compensation claims from veterans exposed to radiation during military service. Under the non-presumptive program, additional factors must be considered to determine service-connection, including amount of radiation exposure, duration of exposure and elapsed time between exposure and onset of disease.

VA regulations define all cancers as potentially radiogenic, as well as certain other non-malignant conditions, such as posterior subcapsular cataracts; non-malignant thyroid nodular disease; parathyroid adenoma; and tumors of the brain and central nervous system.

DEPARTMENT OF ENERGY:

Public Law 106-398; 114 Stat. 1654A-394); 42 U.S.C. 7384 et seq.) is amended as follows: (1) Certain leukemia as specified cancer.--Section 3621(17) (114 Stat. 1654A-502; 42 U.S.C. 7384l(17)), as amended by section 2403 of the Supplemental Appropriations Act, 2001 (Public Law 107-20; 115 Stat. 175), is further amended by adding at the end the following new subparagraph: ``(D) Leukemia (other than chronic lymphocytic leukemia), if initial occupational exposure occurred before 21 years of age and onset occurred more than two years after initial occupational exposure."

"...based on the radiation dose received by the employee (or a group of employees performing similar work) at such facility and the upper 99 per-cent confidence interval of the probability of causation in the radioepidemiological tables published under section 7(b) of the Orphan Drug Act (42 20U.S.C. 241 note), as such tables may be updated under section 7(b)(3) of such Act from time to time..."

Data Required to Estimate Probability of Causation:
Sec. 81.5 Use of Personal and Medical Information. Determining probability of causation may require the use of the following personal and medical information provided to DOL by claimants under DOL regulations 20 CFR part 30:

(a) Year of birth.
(b) Cancer diagnosis (by ICD-9 code) for primary and secondary cancers.
(c) Date of cancer diagnosis.
(d) Gender.
(e) Race/ethnicity (if the claim is for skin cancer or a secondary cancer for which skin cancer is a likely primary cancer).
(f) Smoking history (if the claim is for lung cancer or a secondary cancer for which lung cancer is a likely primary cancer).
(g) This information will include annual dose estimates for each year in which a dose was incurred, together with uncertainty distributions associated with each dose estimate. Dose estimates will be distinguished by type of radiation (low linear energy transfer (LET), protons, neutrons, alpha, low-energy x-ray) and by dose rate (acute or chronic) for external and internal radiation dose.

## Appendix D: Table of Radiation Compensation Programs:
RMI Nuclear Claims Tribunal, U.S. Veterans Administration (VA), U.S. Department of Justice (DOJ) and the U.S. Department of Energy (DOE)

| | VA | DOJ | DOE | NCT |
|---|---|---|---|---|
| Tumors of the salivary gland (malignant) | | $50,000 | $150,000 | $50,000 |
| Cancer of the pharynx | | $50,000 | $150,000 | $100,000 |
| Cancer of the esophagus | | $50,000 | $150,000 | $125,000 |
| Cancer of the stomach | | $50,000 | $150,000 | $125,000 |
| Cancer of the small intestine | | $50,000 | $150,000 | $125,000 |
| Cancer of the colon | | $50,000 | $150,000 | $75,000 |
| Cancer of the cecum | | $50,000 | $150,000 | $75,000 |
| Cancer of the rectum | | $50,000 | $150,000 | $75,000 |
| Cancer of the liver (except if cirrhosis or hepatitis B is indicated) | | $50,000 | $150,000 | $125,000 |
| Cancer of the bile ducts | | $50,000 | $150,000 | $125,000 |
| Cancer of the gall bladder | | $50,000 | $150,000 | $125,000 |
| Cancer of the pancreas | | $50,000 | $150,000 | $125,000 |
| Bronchial cancer (including cancer of the lung and pulmonary system) | | $100,000 | $150,000 | $37,500 |
| Cancer of the bone | | | $150,000 | $125,000 |
| Non-melanoma skin cancer in individuals who were diagnosed as having suffered beta burns) | | | | $37,500 |
| Cancer of the breast (not recurrent or requires lumpectomy) | | $50,000 | $150,000 | $75,000 |
| Cancer of the breast (recurrent or requires mastectomy) | | $50,000 | $150,000 | $100,000 |
| Cancer of the ovary | | $50,000 | $150,000 | $125,000 |
| Cancer of the urinary tract | | $50,000 | $150,000 | $75,000 |
| Cancer of the kidney | | $50,000 | $150,000 | $75,000 |
| Tumors of the brain, including schwannomas (excluding other benign neural tumors) | | $50,000 | $150,000 | $125,000 |
| Cancer of the central nervous system | | | | $125,000 |
| Cancer of the thyroid (recurrent) | | $50,000 | $150,000 | $75,000 |
| Cancer of the thyroid (non-recurrent) | | $50,000 | $150,000 | $50,000 |
| Tumors of the parathyroid gland (malignant) | | | | $50,000 |
| Lymphomas (except Hodgkin disease) | | $50,000 | $150,000 | $100,000 |
| Multiple myeloma | | $50,000 | $150,000 | $125,000 |

| | | | | |
|---|---|---|---|---|
| Leukemia (other than chronic lymphocytic leukemia) | | $50,000 | $150,000 | $125,000 |
| Tumors of the salivary gland (benign and requiring surgery) | | | | $37,500 |
| Tumors of the salivary gland (benign and not requiring surgery) | | | | $12,500 |
| Non-malignant thyroid nodular disease (unless limited to occult nodules – total thyroidectomy) | | | | $50,000 |
| Non-malignant thyroid nodular disease (unless limited to occult nodules – partial thyroidectomy) | | | | $37,500 |
| Non-malignant thyroid nodular disease (unless limited to occult nodules – not requiring thyroidectomy) | | | | $12,500 |
| Parathyroid adenoma | | | | |
| Meningioma | | | | $100,000 |
| Non-malignant brain and central nervous system tumors | | | | |
| Radiation sickness diagnosed between June 30, 1946 and August 18, 1958, inclusive) | | | | $12,500 |
| Beta burns diagnosed between June 30, 1946 and August 18, 1958, inclusive) | | | | $12,500 |
| Unexplained hyperparathyroidism | | | | $12,500 |
| Unexplained hypothyroidism (unless thyroiditis indicated) | | | | $37,500 |
| Severe growth retardation due to thyroid damage | | | | $100,000 |
| Severe mental retardation (provided born between May and September 1954, inclusive, and mother was present on Rongelap or Utirik Atolls at any time in March 1954) | | | | $100,000 |
| Unexplained bone marrow failure | | | | $125,000 |
| Chronic kidney disease | | $100,000 | | |
| Chronic respiratory disease | | $100,000 | | |

The U.S. Veterans Administration (VA) pursuant to the Radiation-Exposed Veterans Compensation Act provides compensation to veterans and their survivors proportional to disability and family considerations. Although it is not possible to assign a lump-sum payment it is unlikely that a veteran would receive more than $35,000 per year in wages in addition to VA provided medical care under the Veterans Health Reform Act. Veterans who worked at one of the Department of Energy Gaseous Diffusion Plants are also eligible for lump sum payments in addition to any VA compensation.

The U.S. Department of Justice (DOJ) Radiation Exposure Compensation Act Amendments of 2000 updated the original program that provides radiation compensation as a lump-sum payment. Uranium miners, millers

and ore transporters are covered as well as people living downwind of the Nevada Test Site. Uranium workers receiving a DOJ payment are also eligible, under certain circumstances to receive additional $50,000 compensation from the U.S. Department of Energy compensation program.

The U.S. Department of Energy (DOE) Employees Occupational Illness Compensation Program Act provides compensation to workers diagnosed with radiation-related cancer if: the employee developed cancer after working at a facility of the Department of Energy. Federal employees, contractors, and subcontractors are eligible. The employee's cancer is judged to be "at least as likely as not related to that employment" in accordance with guidelines issued by the Department of Health and Human Services. The worker or surviving family member receive a lump-sum payment, exposed people who are living are also eligible for workers compensation from their respective state agency to cover medical costs and lost wages.

The Nuclear Claims Tribunal (NCT) was established as an independent entity within the Republic of the Marshall Islands to adjudicate claims of radiation illness and loss of use of land. Lump-sum awards are made to people with specified conditions but are paid out periodically over a number of years. The RMI Government gave the NCT full authority to determine what medical conditions it would consider radiation-related. The NCT makes awards without testing the likelihood of exposure.

## Appendix E: Executive Summary Included in "Findings of the Nationwide Radiological Study of the RMI"

Summary Report, prepared for the Cabinet of the Government of the RMI, December 1994, by Dr. Steve Simon, Study Director

For a five-year period (1989-1994), the RMI Government has undertaken an assessment of radiological conditions throughout the nation. This scientific work was performed in accordance with the Section 177 Agreement which dedicated funding for radiological monitoring activities. The RMI Nationwide Radiological Study has measured radiation in the environment and gathered samples of food crops, soil and water at all of atolls and at every island of significant size. These samples were subsequently analyzed at the environmental radiation laboratory in Majuro. The Study has also reviewed previous scientific information about the nuclear tests, consulted with the international scientific community, met with outer island communities and their leaders, conducted the specialized work of the Rongelap Resettlement Project, and examined the health effects of radiation exposure, especially thyroid disease.

The Study has determined the levels of radioactivity retained in the environment at locations throughout the country. The radioactive element cesium is the largest contributor to radiation exposure, partly because it enters the food crops through the roots of plants. At most locations in the Marshall Islands, the amount of cesium is about the same, or only slightly higher, than it would be at other tropical locations throughout the world. The Study found evidence of local radioactive fallout in the northern portion of Kwajalein Atoll and at Wotje Atoll and at islands and atolls north of these locations.

From the present levels of radiation in the environment, the Study is able to estimate the cumulative radiation that an individual might have received from the environment since the end of the testing program in 1958.

The Study has also estimated the exposure levels that would be encountered by people living at different locations throughout the country. The radiation dose than an individual might receive is the sum of the <u>external dose</u> received directly from the environment and <u>internal dose</u> coming from food and drink. From these calculations, the Study has determined that the use of some of the islands in the four atolls should be restricted: Bikini, Enewetak,

Rongelap and Rongerik. While other atolls and islands received fallout from the nuclear tests, the amount of radioactivity remaining in the environment has diminished to levels that are not of concern. However, the present measurements cannot eliminate the possibility that exposure to radioisotopes of iodine may have been of radiological concern. Therefore, a special study of thyroid disease throughout the Marshall Islands has been implemented and should be completed.

**Appendix F: References**

**SECTIONS 3.1 AND 3.2**

Boyce RL. Statement of Ralph L. Boyce, Deputy Assistant Secretary of State, East Asian and the Pacific Affairs, Department of State. In: The Status of Nuclear Claims, Relocation and Resettlement Efforts in the Marshall Islands. Hearing Before the Committee on Resources, House of Representatives, One Hundred Sixth Congress, First Session, May 11, 1999, Washington, D.C.

Hamilton TF. Rongelap Resettlement Support - Preliminary Report Part 1. In-situ gamma spectrometric measurements around the service and village area on Rongelap Island. Lawrence Livermore National Laboratory Report No.UCRL-143680, April 2001.

Hamilton T, Hickman D, Conrado C, Brown T, Brunk J, Marchetti A, Cox C, Martinelli R, Kehl S, Arelong E, Langinbelik S, Bell RT, Petersen G. Individual radiation protection monitoring in the Marshall Islands: Rongelap Island resettlement support (1998-2001). Lawrence Livermore National Laboratory Report No. UCRL-LR-149600, June 2002a.

Hamilton T, Hickman D, Conrado C, Brown T, Brunk J, Marchetti A, Cox C, Martinelli R, Kehl S, Johannes K, Henry D, Bell RT, Petersen G. Individual radiation protection monitoring in the Marshall Islands: Enewetak Island resettlement support (May-December 2001). Lawrence Livermore National Laboratory Report No. UCRL-LR-149601, June 2002b.

International Atomic Energy Agency. Radiological conditions at Bikini Atoll: Prospects for resettlement. Vienna: IAEA, 1998.

McEwan AC, Simon SL, Baverstock KF, Trott KR, Sankaranarayanan K, Paretzke HG. Some reflections on the role of the Scientific Advisory Panel to the Marshall Islands nationwide radiological study. Health Physics 1997, 73(1):265-269.

National Research Council, Committee on Radiological Safety in the Marshall Islands. Radiological assessments for resettlement of Rongelap in the Republic of the Marshall Islands. Washington, D.C.:NRC, 1994.

National Research Council. Evaluation of Enewetak radioactivity containment. Committee on Evaluation of Enewetak Radioactivity Containment, Advisory Board on the Built Environment, Commission on Sociotechnical Systems. Washington, D.C.: National Academy Press, 1982.

Nuclear Claims Tribunal annual report to the Nitijela for the calendar year 1999. Majuro: NCT, 1999.

Robison WL, Noshkin VE, Hamilton TF, Conrado CL, Bogen KT. An assessment of the current day impact of various materials associated with the U. S. nuclear test program in the Marshall Islands. Lawrence Livermore National Laboratory Report No. UCRL-LR-143980, May 2001.

Seligman PJ. Statement of Dr. Paul J. Seligman, M.D., M.P.H., Deputy Assistant Secretary for Health Studies, U.S. Department of Energy. In: The Status of Nuclear Claims, Relocation and Resettlement Efforts in the Marshall Islands. Hearing Before the Committee on Resources, House of Representatives, One Hundred Sixth Congress, First Session, May 11, 1999, Washington, DC.

Simon SL and Graham JC. Findings of the Nationwide Radiological Study, Republic of the Marshall Islands, Summary Report prepared for the Cabinet of the Government of the Republic of the Marshall Islands, December 1994. RMI Nationwide Radiological Study/Ministry of Foreign Affairs, Majuro Marshall Islands.

Simon SL and Graham JC. Findings of the First Comprehensive Radiological Monitoring Program of the Republic of the Marshall Islands. Health Physics 1997a, 73:66-85.

Simon SL, Robison WL, Thorne MC, Toburen LH, Franke B, Baverstock KF, Pettingill HJ. A Comparison of Independently Conducted Dose Assessment to Determine Compliance and Resettlement Options for the People of Rongelap Atoll. Health Physics 1997b, 73:133-151.

Simon SL and Graham JC. A comparison of aerial and ground level measurements of $^{137}Cs$ in the Marshall Islands. Environmental Monitoring and Assessment 1998, 53:363-377.

Stayman AP. Statement of Allen P. Stayman, Director of the Office of Insular Affairs, Department of the Interior, before The House Committee on Resources Regarding Radiation-Related Matters and the Resettlement, Relocation, and Radiological Rehabilitation of the Bikini, Enewetak, Rongelap and Utrik Atolls, May 11, 1999.

Takahashi T, Schoemaker MJ, Trott KR, Simon SL, Fujimori K, Takahashi T, Trott KR, Fujimori K, Nakashima N, Ohtomo H, Schoemaker MJ, Simon SL. Thyroid disease in the Marshall Islands: Findings from 10 years of study. Sendai: Tohoku University Press, 2001.

Tipton WJ and Meibaum RA. An aerial radiological and photographic survey of eleven atolls and two islands within the northern Marshall Islands. U.S. Department of Energy Report No. EGG-1183-1758, June 1981.

**<u>SECTION 3.3</u>**

Behling H, Mauro J, Behling, K. Reassessment of Acute Radiation Doses Associated with BRAVO Fallout. McLean, VA: S. Cohen and Associates. May 2000.

Breslin AJ, Cassidy ME. Radioactive Debris from Operation Castle, Islands of the Mid Pacific. NYO-4623. United States Atomic Energy Commission, New York Operations Office, Health and Safety Division. Available from Las Vegas: Coordination and Information Center. 1955.

DNA. Compilations of local fallout data from test detonations 1945-1962 extracted from DASA 1251, Volume 11-Oceanic U.S. tests. Prepared by the General Electric Company-TEMPO. Washington, D.C.: Defense Nuclear Agency, 1979.

Environmental Measurements Laboratory (EML). EML Procedures Manual, HASL-300. 28th edition, available at htlp://www.eml.doe.gov/publications/procman/. 1997.

ICRP. 1990 Recommendations of the International Commission on Radiological Protection, ICRP Publication 60, International Commission on Radiological Protection. Oxford: Pergamon Press. 1990.

Joint Committee on Atomic Energy (JCAE). The Nature of Radioactive Fall-Out and Its Effects on Man, Part 1, Washington, D.C. 1957.

Lessard E, Miltenberger R, Conard R, Musolino S, Naidu J, Moorthy A, Schopfer C. Thyroid Absorbed Dose for People at Rongelap, Utrik and Sifo on March 1, 1954 BNL 51882. Upton, NY: Brookhaven National Laboratory, Safety and Environmental Protection Division. 1985.

MedlinePlus Health Infomation, A service of the National Library of Medicine. Web page: "Urine 24 hr volume." Available at http://www.nlm.nih.gov/medlineplus/ ency/article/003425.htm. Accessed June 6, 2002.

National Research Council. Health effects of exposure to low levels of ionizing radiation: BEIR V. Washington D.C.: NAS, 1990:181.

National Research Council. The effects on populations of exposure to low levels of ionizing radiation. BEIR I. Washington D.C.: National Academy of Sciences, 1972.

National Research Council. The effects on populations of exposure to low levels of ionizing radiation: 1980. BEIR III. Washington D.C.: National Academy of Sciences, 1980.

Peterson K, CASTLE-BRAVO Air Concentrations and Deposition Patterns from a 3-D Particle-in-Cell Code. UASG 81-20, Livermore, CA: Lawrence, Livermore National Laboratory, 1981.

Robison WL, Noshkin VE, Conrado CL, Eagle RJ, Brunk JL, Jokela TA, Mount ME, Phillips WA, Stoker AC, Stuart ML, Wong KM. The northern Marshall Islands radiological survey: data and dose assessments. Health Physics 73(l):37-48, 1997.

Sharp R, Chapman WH. Report to the scientific director: Exposure of Marshall Islanders and American military personnel to fallout, WT-938, Operation Castle Project 4.1 Addendum. Bethesda, MD: Naval Medical Research Institute, 1957. Extract version prepared for Defense Nuclear Agency (Washington, D.C.) 1980.

Simon SL, Graham JC. Findings of the Nationwide Radiological Study: Summary Report, submitted to the Cabinet of the Government of the Republic of the Marshall Islands. December 1994. Available from Ministry of Foreign Affairs, Government of the Republic of the Marshall Islands, Majuro, Marshall Islands, 96960. 1994.

Simon SL, Graham JC. Findings of the First Comprehensive Radiological Monitoring Program of the Republic of the Marshall Islands. Health Physics 73(1):66-85. 1997.

Sondhaus CA, Bond VP. Physical factors and dosimetry in the Marshall Island radiation exposures. Operation CASTLE, Pacific Proving Grounds addendum report for Project 4.1. WT-939(del). San Francisco, CA: U.S. Naval Radiological Defense Laboratory. 1959.

U.S. Department of Energy. Closing the circle on the splitting of the atom: The environmental legacy of nuclear weapons production in the United States and what the Department of Energy is doing about it. Washington, D.C.: DOE, 1995.

U.S. Department of Energy. Order DOE 5400.5, Radiation protection of the public and the environment, February 8, 1990 & supplements dated June 6, 1990 and September 4, 1992. Washington, D.C.: DOE.

U.S. Environmental Protection Agency. Federal radiation protection guidance for exposure of the general public. Federal Register, December 24, 1994. [22 FR 4402].

U.S. Nuclear Regulatory Commission. Standards for protection against radiation; Final rule. In: 10 CFR Part 20, 56 FR 23391, May 21, 1991.

U.S. Office of the President. Federal radiation protection guidance. Federal Register, May 18, 1960. [54 FR 51654].

**SECTION 5**

Omnibus Territories Act of 1977, Section 104(a)(4). Public Law 95-134. 91 Stat. 1162.

Compact of Free Association Act of 1985, Section 103(h)(1). Public Law 99-239. 91 Stat. 1159.

Office of Environment, Safety and Health; Notice of availability of funds and Request for Applications to deliver special medical care in the Marshall Islands. Federal Register 1997, 62:177:48065-73.

Department of Energy/Office of Environment, Safety and Health:Draft Notice of Availability of Funds and Request for Applications for the Department of Energy Medical Program in the Republic of the Marshall Islands, 62 Fed. Reg. 29125 (May 29, 1997).

**SECTION 8**

Bell RT. Comments on the Marshall Islands proposed medical monitoring and treatment legislation S1804 and other matters, June 20, 1996. U.S. Department of Energy, Office of Health Studies, Marshall Islands Program Document No. vfc/ O970000GW.PDF.

Bikini Atoll Rehabilitation Committee, Report No. 1, Resettlement of Bikini Atoll: Feasibility and estimated cost of meeting the Federal Radiation Protection Standards. Prepared by the Bikini Atoll Rehabilitation Committee for the U.S. Congress, House and Senate Committees on Interior Appropriations pursuant to Public Law 97-257. Berkeley: BARC, November 15, 1984.

Bikini Atoll Rehabilitation Committee, Supplementary Report No. 1, Environmental assessment for initial resettlement of Eneu Island, Bikini Atoll. Prepared by the U.S. Army Corps of Engineers, Pacific Ocean Division for the U.S. Congress, House and Senate Committees on Interior Appropriations pursuant to Public Law 97-257. Berkeley: BARC, January 1, 1987.

Church BW. History of cleanup standards/criteria at nuclear test and accident sites. Session XVI - Thirteenth Technical Information Exchange Workshop, Albuquerque, New Mexico, November 12-15, 2001. Washington, D.C.: U.S. Department of Energy, Office of Environmental Management..

Friesen B. Enewetak radiological support project: Final report, September 1982. U.S. Department of Energy, Nevada Operations Office Report NVO-213. Las Vegas: NVO, 1982, Chapter 2.

Hamilton T. Personal communication regarding cleanup standards.

International Atomic Energy Agency. Application of radiation protection principles to the cleanup of contaminated areas. IAEA-TECDOC-987. Vienna: IAEA, 1997.

International Atomic Energy Agency. Radiological conditions at Bikini Atoll: Prospects for resettlement. Radiological Assessment Reports Series. Vienna: IAEA, 1998.

International Commission on Radiological Protection. Protection of the Public in Situations of Prolonged Radiation Exposure, ICRP-85. Annals of the ICRP 2000, 29 (Issues 1 & 2).

Mauro J. Statement by John Mauro before the Committee on Resources regarding the status of nuclear claims, relocation, and resettlement efforts in the Marshall Islands. U.S. House of Representatives, May 11, 1999.

Monroe RR, Peters R, Wilson DL. The radiological cleanup of Enewetak atoll. Defense Nuclear Agency, 1981.

Robison WL, Phillips WA, Mount ME, Clegg BR, Conrado CL. Reassessment of the potential radiological doses for residents resettling Enewetak Atoll. Livermore National Laboratory Report No. UCRL-53066, October 1980.

Robison WL, Conrado CL, Phillips WA. Enjebi Island dose assessment. Lawrence Livermore National Laboratory Report No. UCRL-53805, July 1987.

Robison WL, Bogen KT, Conrado CL. An updated dose assessment for a U.S. nuclear test site – Bikini Atoll. Lawrence Livermore National Laboratory Report No. UCRL-ID-122368, 1995.

Robison WL, Stone EL. The evaluation of critical pathways, radionuclides, and remedial measures for reducing the radiological dose to returning

populations at a former nuclear test site. U.S. Department of Energy, Waste Management Symposium, Session 17, 1998.

Robison WL, Conrado CL, Bogen KT. Utirik Atoll dose assessment. Lawrence Livermore National Laboratory Report No. UCRL-LR-135953, October 1999a.

Robison WL, Conrado C, Stuart M, Stoker A, Hamilton t. Resettlement of Bikini Atoll – U.S. nuclear test site. In: International Symposium on Restoration of Environments with Radioactive Residues. International Atomic Energy Agency, IAEA-SM-359. Arlington, VA, 1999b.

Simon SL, Graham JC. Findings of the Nationwide Radiological Study, Republic of the Marshall Islands, Summary Report. Majuro: NWRS, 1994.

Simon SL, Robison WL, Thorne MC, Toburen LH, Franke B, Baeverstock KF, Pettingill HJ. A Comparison of Independently Conducted Dose Assessment to Determine Compliance and Resettlement Options for the People of Rongelap Atoll. Health Physics 1997, 73:133-151.

U.S. Department of Energy. Linking legacies: Connecting the cold war nuclear weapons production process to their environmental consequences. Washington, D.C.: U.S. DOE, Office of Environmental Management, January 1997, chapter 4.

Weber JM. Final Report, Task 1: Cleanup levels at other sites. Radionuclide Soil Action Level Oversight Panel. Risk Assessment Corporation. RAC Report No. 6-RSALOP-RFSAL-1999-FINAL, RAC: 1999.

**<u>SECTION 10</u>**

Hamilton, T., and others. Status of Environmental Assessements On and Around Runit Island, Enewetok Atoll. Lawrence Livermore National Laboratory, 2004 (unpublished.)